495 So.2d 1311 (1986)
LOUISIANA STATE BAR ASSOCIATION
v.
Roy L. PRICE.
No. 84-B-1218.
Supreme Court of Louisiana.
October 20, 1986.
*1312 Thomas O. Collins, Jr., New Orleans, Cheri Cotogno, Arabi, Gerald F. Thomas, Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfres S. Landry, New Iberia, Philippi P. St. Pee', Metairie, for relator.
Roy L. Price, Metairie, for respondent.
CALOGERO, Justice.
This attorney discipline matter arose out of the felony conviction of Roy L. Price (a member of the bar of this state since 1951) in the United States District Court for the Eastern District of Louisiana.
On August 9, 1983, after trial, a jury found Price guilty of four related crimes.[1] A sentence of eighteen months confinement on each count with the sentences to run concurrently was imposed. Respondent appealed his conviction to the United States Court of Appeals for the Fifth Circuit, which upheld the conviction for violation of 18 U.S.C. § 2113(b), taking and carrying away with intent to steal or purloin property, money or other thing of value exceeding $100.[2] That court, however, invoked the "concurrent sentence doctrine"[3] to decline review of the convictions *1313 on the other three charges, violations of 18 U.S.C. § 371, 18 U.S.C. § 1014 coupled with 18 U.S.C. § 2, and 18 U.S.C. § 1001, and vacated the sentences on those. United States v. Price, 740 F.2d 966 (table) slip op. at 10 (5th Cir.1984), cert. denied, 469 U.S. 1208, 105 S.Ct. 1173, 84 L.Ed.2d 323 (1985). As a consequence, there is only one felony, not vacated, of which Price stands convicted.
On March 26, 1984, based upon Price's convictions in the United States District Court, the Committee on Professional Responsibility held an Ehmig hearing.[4] Thereafter, on June 26, 1984, the Committee filed a report in this Court contending that the crimes for which Price was convicted were serious crimes which reflected on his moral fitness to practice law. On September 19, 1984, this Court, pursuant to section 8(4) of article XV,[5] issued an order suspending Price from the practice of law. After the conviction for violation of 18 U.S.C. § 2113(b) became final, the Committee filed a Petition for Disciplinary Action. We appointed a Commissioner, who conducted a hearing on February 28, 1986. Respondent appeared at the hearing represented by counsel. The Commissioner recommended to this Court "that it find that the suspension of respondent from the practice of law from September 18, 1984, to date be adequate, and that Price now be restored to the practice of law." The Committee on Professional Responsibility filed a Concurrence to the Report of the Commissioner in which it agreed with the Commissioner's findings of fact, conclusions of law, and recommendation as to discipline. Respondent Price and the Committee submitted the matter without oral argument.
Section 8(7)(d) of article XV sets forth the rule to be followed when a member of the bar has been convicted of a crime and all appeals have been concluded or exhausted. It provides as follows:
At the hearing based upon a respondent's conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime.
Thus, the sole issue to be determined by this Court in a disciplinary hearing based on conviction of a crime is whether the crime warrants discipline, and if so, the extent thereof. The discipline to be imposed in a particular case depends on the seriousness of the offense, the circumstances of the offense, and the extent of aggravating and mitigating circumstances. Louisiana State Bar Association v. Brumfield, 449 So.2d 1017, 1018 (La.1984); Louisiana State Bar Association v. Paige, 456 So.2d 990, 991-92 (La.1984).
The charges against Price arose out of a series of transactions in 1978, 1979 and 1980 between Price and Commercial Bank *1314 & Trust (CB & T) relative to a real estate development project known as Oakland Estates. To obtain collateral for this venture, Price and two other principals in the project obtained a loan for $300,000 from CB & T. At the same time, Price obtained a personal loan for $100,000 from CB & T. This $100,000 loan was used to purchase a certificate of deposit which was placed as additional security with the prime lender for the Oakland Estates project. As collateral security for the $100,000 loan, Price and his wife executed in favor of CB & T a $100,000 collateral mortgage (with appropriate accompanying notes) on the building which housed his law office. The National Bank of Commerce in Jefferson already held a first mortgage on this same property (hand note with a $41,830 balance, secured by $85,000 collateral mortgage). The property was appraised at $175,000.
On March 7, 1980, A.J. Graffagnino, a co-principal with Price in the real estate development, who was also Chairman of the Board of CB & T, allowed Price to take the $100,000 collateral mortgage note out of the bank simply upon executing a trust receipt.[6] Printed upon the trust receipt was the following:
It is expressly agreed that the delivery of the withdrawn securities is being temporarily made to the undersigned for convenience only, without novation of the original debt, or giving the undersigned any title to the withdrawn securities, and the undersigned is/are given possession thereof solely as trustee/trustees for said Bank, and as such to receive the avails thereof for account of said Bank.
It is further stipulated that the undersigned shall not, under any circumstances whatsoever, use, sell, or repledge the withdrawn securities, or any of them, withdrawn under the terms of this TRUST RECEIPT, nor use, sell or repledge the cash, stocks, bonds or other property, or any part therefor, received thereof, for any purpose than that of paying the indebtedness for the security of which the said withdrawn securities are pledged to said Bank.
At about the same time, Price was negotiating a $100,000 consolidation loan with the National Bank of Commerce in Jefferson (NBC), the bank which held a hand note with a $41,830 balance secured by an $85,000 collateral mortgage note and a first mortgage on the law office. As a condition of making the $100,000 loan, NBC required a corresponding $100,000 first mortgage on the law office building. Price agreed to furnish same. NBC thereupon loaned Price $100,000 on March 14, 1980. To accommodate his need and NBC's requirements, Price, himself a notary, cancelled CB & T's $100,000 collateral mortgage note and the mortgage office inscription of the corresponding second mortgage. Once the two mortgage notes were cancelled, NBC's $100,000 collateral mortgage was recorded and became the first and only mortgage on his law office building. Price used the $100,000 loan from NBC to pay off or consolidate loans at NBC which totalled approximately $70,000. That included the balance of $41,830 on the hand note, payment of which was secured by NBC's collateral mortgage, and approximately $30,000 in other loans. The remaining money, about $30,000, was paid to CB & T and applied by the bank, not to the $100,000 debt whose mortgage had been cancelled, *1315 but to other obligations of Price, presumably the outstanding loans in connection with the real estate venture. Thus, after this transaction, NBC had collateral appraised at $175,000 on its $100,000 loan; CB & T, on the other hand, had no collateral on its $100,000 loan, but had received $30,000 to reduce other debts on which Price was liable.[7] So CB & T went from being a $100,000 creditor with a second mortgage on a $175,000 building, behind an $85,000 collateral mortgage (securing a hand note with a $41,830 balance) to an unsecured creditor, as regards their $100,000 loan, but having recovered $30,000 of an independent obligation.
At the hearing before the Commissioner, respondent, as permitted, introduced evidence of mitigating circumstances. Respondent is sixty years old. His undergraduate studies were interrupted by service in the United States Navy during World War II. He graduated from law school and was admitted to practice in Louisiana in 1951. He practiced law with other attorneys from 1954 until 1959, when he opened his own law office in Metairie. He was elected to a state district court judgeship (24th Judicial District) in January, 1982, from which he voluntarily resigned in October, 1983 (after, and no doubt because of, his conviction in the federal district court). Price has been active in and has served in various offices in the Jefferson Bar Association and the Louisiana State Bar Association. He served as parish attorney for Jefferson Parish from 1970 to 1972. No prior disciplinary proceedings have been instituted against him by the bar association.
Price served eight months of his eighteen month sentence in the Federal Correctional Institution at Fort Worth, Texas, with an incident-free record. He served five months at the Halfway House in New Orleans, having reduced his sentence to thirteen months by obtaining "good time." He signed a consent judgment with CB & T and is working to pay the unpaid portions of his personal and business loans. Seventy-four letters attesting to Price's character and reputation for honesty and dependability were submitted to the Commissioner. Many prominent lawyers, judges, and public officials, as well as former clients, urge that Price's conviction and corresponding discipline be considered with due regard to his many years of unsullied professional and public service. Significantly, respondent's conduct was not connected with the practice of law and did not involve any client or professional associate. He has suffered gravely by having to give up his judicial office, according to him, the pinnacle of his thirty year law career.
We agree with the finding of the Commissioner, concurred in by the Committee, that respondent has been convicted of serious crimes which reflect adversely upon his moral fitness to practice law. Hence, disciplinary action is warranted. We further agree, after considering his conviction, the conduct which gave rise to the conviction, and the evidence of mitigating circumstances as set forth above, that suspension rather than disbarment is the appropriate discipline which should be imposed. Price had an established reputation in the community as a good attorney and, until this incident at least, an honest and unselfish one, who was a credit to his profession. His short stint as a district judge also generated praise from those who practiced before him. He has not previously been the subject of bar disciplinary proceedings. He is in the process of paying off the unpaid balance of his loans with CB & T, according to CB & T's attorneys. The Commissioner recommends that this *1316 Court's post conviction suspension from the practice of law, dating from September 8, 1984, through the present be deemed the appropriate discipline. The Committee on Professional Responsibility concurs in the Commissioner's recommendation. We determine that suspension from the practice of law for a period of twenty-five months, to October 17, 1986, is the appropriate penalty under all of the circumstances.

Decree
For the reasons assigned it is ordered, adjudged and decreed that suspension from the practice of law in Louisiana for a period of twenty-five months which commenced on September 18, 1984, is the appropriate discipline, and has been imposed upon respondent Roy L. Price.
ATTORNEY SUSPENDED TWENTYFIVE MONTHS FROM SEPTEMBER 18, 1984.
NOTES
[1] Price was found guilty of the following crimes: conspiracy to make and use false material statements and representations to the Commercial Bank & Trust Company (CB & T) to obtain loans and loan extensions, in violation of 18 U.S.C. § 371; making a materially false statement to CB & T for the purpose of renewing a loan, in violation of 18 U.S.C. § 1014 and 18 U.S.C. § 2; using a document containing a materially false, fictitious and fraudulent statement in connection with the disclosure of collateral to the FDIC, in violation of 18 U.S.C. § 1001; and taking and carrying away with intent to steal monies, funds, and credits of CB & T, in violation of 18 U.S.C. § 2113(b).
[2] Section 2113(b) provides in pertinent part as follows:

Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both.
[3] "The concurrent sentence doctrine, provides that if a prisoner is serving two or more concurrent sentences, and a reviewing court determines that one of the sentences is valid, the court may decline to review or consider the remaining sentence(s). The doctrine is based on judicial convenience and economy." Williams v. Maggio, 714 F.2d 554, 555 (5th Cir. 1983), cert. denied, 465 U.S. 1035, 104 S.Ct. 1306, 79 L.Ed.2d 704 (1984) (citations omitted). However, "should the government subsequently determine that the interests of justice require that the sentences be reimposed, it may make objections and thereby cause these convictions to be subject to appellate review." United States v. Cardona, 650 F.2d 54, 58 (5th Cir.1981).
[4] Louisiana State Bar Association v. Ehmig, 277 So.2d 137 (La.1973) implements Section 8 of article XV of the Articles of Incorporation of the Louisiana State Bar Association "insofar as they allow the suspension of an attorney from the practice of law because of his conviction of a `serious crime' without affording him a prior hearing on the issue ... in violation of the due process provisions of the United States Constitution and Art. I, Section 2 of the Louisiana Const. of 1921." Ehmig, 277 So.2d at 140. In a per curiam in response to an application for rehearing to clarify the holding, we said that "[b]efore the Committee on Professional Responsibility can petition the Court for suspension of an attorney whose conviction is not final under Section 8 of Article XV, Articles of the Louisiana State Bar Association, it must hold a contradictory hearing and determine that the conviction involves a `serious crime.'" Id. at 141.
[5] Section 8(4) of article XV reads as follows:

If the Supreme Court should concur with the opinion of the Committee that the crime of which the attorney has been convicted constitutes a serious crime, the Supreme Court may suspend the respondent from the practice of law and order the Committee to institute the necessary disciplinary proceedings provided however, that the disciplinary proceedings so instituted will not, unless requested by the accused, be brought to a hearing until all appeals from the conviction are concluded.
[6] On appeal, Price argued that the evidence was insufficient to establish a violation of section 2113(b). (The indictment regarding the violation of section 2113(b) charged that "Price, did knowingly, willfully and intentionally take and carry away with the intent to steal and purloin, from the CB & T ... $100,000 of the moneys, funds and credits of the CB & T....") The collateral mortgage note was taken from the bank in exchange for a trust receipt which specifically allowed the trustee (Price) to surrender, sell or exchange the withdrawn security, with the requirement, however, that the trustee (Price) make payments to the bank from the proceeds. Although Price did pay to CB & T (which they credited to another debt of Price's, presumably related to the real estate development) $30,000 obtained from refinancing the loan at NBC, the U.S. Fifth Circuit found that the collateral mortgage had been taken from CB & T under false pretenses, which, they decided, is encompassed within section 2113(b)'s proscription against taking with intent to steal, citing United States v. Bell, 678 F.2d 547 (5th Cir.1982) (en banc), aff'd, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).
[7] Price testified at trial and at the hearing before the Commissioner that, at the time of the cancellation of the original mortgage, he had furnished Graffagnino a new $150,000 collateral mortgage and mortgage note, although in incomplete form. (The signature of Price's wife and the description of the property were missing.) Price claims he intended that the new collateral mortgage would be recorded after recordation of the refinanced $100,000 NBC mortgage. However, this new collateral mortgage was never recorded. Whether execution of this instrument and placement with Graffagnino took place, and when, and whether such should serve to disprove culpability on the part of Price is, of course, arguable and was much contested at trial. Suffice it to say that the jury resolved the overall matter by finding Price guilty.