515 So.2d 1070 (1987)
LOUISIANA STATE BAR ASSOCIATION
v.
Wayne M. BABOVICH.
No. 86-B-1204.
Supreme Court of Louisiana.
November 30, 1987.
Thomas O. Collins, Jr., New Orleans, Anne LaCour Neeb, New Orleans, Gerald F. Thomas, Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pe', Metairie, for applicant.
Wayne M. Babovich, Ralph S. Whalen, Jr., New Orleans, for respondent.
DIXON, Chief Justice.
The Louisiana State Bar Association instituted this disbarment proceeding against Wayne M. Babovich based upon his conviction in the United States District Court for the Eastern District of Louisiana. On August 30, 1985 Babovich pleaded guilty to a federal indictment charging a conspiracy to "use and cause to be used the United States Mails in furtherance of a scheme and artifice to defraud the citizens of New Orleans, Louisiana by depriving those citizens of their right to have the City of New Orleans' business conducted openly, honestly, impartially, and free from corruption and undue influence, in violation of Title 18, United States Code, Section 1341."[1]
*1071 On January 14, 1986 Babovich was sentenced to two years' incarceration with all but the first six months suspended and eighteen months' probation. On April 23, 1986 the United States District Court for the Eastern District of Louisiana granted Babovich's motion for a reduction of sentencereducing Babovich's incarceration time from six months to seventy-five days and mandating that the first four months of probation were to be spent doing community service work forty hours per week and thereafter four hours per week for six months. On June 30, 1986 this court, pursuant to § 8(a)(4) of Article XV,[2] issued an order suspending Babovich from the practice of law and required the Committee on Professional Responsibility to institute the necessary discipline proceedings. The committee petitioned for disciplinary action. We appointed a commissioner, who conducted a hearing on January 26 and 27 and February 3, 1987. The commissioner found that Babovich was convicted of a serious offense and recommended that he be disbarred. The committee concurred in the commissioner's findings of facts and conclusions of law.
When a disciplinary hearing is based on conviction of a crime, the sole issue to be determined by this court is whether the crime warrants discipline and if so, the extent thereof. Louisiana State Bar Association v. Price, 495 So.2d 1311, 1313 (La.1986). The discipline to be imposed in a particular case depends on the seriousness of the offense, the circumstances of the offense, and the extent of aggravating and mitigating circumstances. Price, supra, citing Louisiana State Bar Association v. Paige, 456 So.2d 990, 991-92 (La.1984), Louisiana State Bar Association v. Brumfield, 449 So.2d 1017, 1018 (La.1984).
In this case, the offense consisted of a plan devised by Babovich, who at the time was a New Orleans City Councilman, representing District E-New Orleans East, and Nelson Chatelain, a real estate developer. The two planned that Chatelain would acquire title to a 3-½ acre tract of land, zoned commercial, in New Orleans East and later sell it. Babovich and Chatelain would split the anticipated profits.
This tract of land was adjacent to a 26-½ acre tract, at that time zoned residential. An individual, Cleo Pelleteri, owned the larger tract and had an ownership interest in the smaller. In the summer of 1982, Pelleteri had given Medicorp Development Company an option to purchase the 26-½ acre tract.[3] This option was contingent upon a zoning change from residential to commercial to permit the building of a hospital on the site. A petition was presented to the City Planning Commission and later to the New Orleans City Council to have the 26-½ acre tract rezoned. If the zoning change succeeded, the value of the 3-½ acres was expected to increase.
In August, 1982, while this petition was pending and before Babovich had acted on *1072 it in his official capacity, he met with Chatelain and David Warner, an attorney, to discuss the acquisition of the 3-½ acre tract. Warner was not to reveal that the interested parties were Babovich and Chatelain.
On September 29, 1982, Babovich, already an acquaintance of Pelleteri's, arranged for her to meet Warner at a luncheon date. During the luncheon meeting, Babovich explained to Pelleteri that he was encountering opposition from groups such as environmentalists and Methodist Hospital to the rezoning of the 26-½ acre tract. Babovich then told Pelleteri that Warner was representing a group of doctors who wished to remain anonymous, but who were interested in purchasing the 3-½ acre tract. Pelleteri left the luncheon meeting with the impression that the sale of the option to purchase the smaller tract "had something to do with the rezoning of the larger 26-½ acre tract."
In October, 1982, Warner presented Pelleteri with a typed option to buy the 3-½ acres. He also gave her $1000 earnest money. At one point, Warner told Pelleteri, "if you grant me an option on the 3-½ acres, your zoning will sail through." Pelleteri refused to grant the option. She then visited Babovich at his home on November 16, 1982 and related to him what Warner had told her. Babovich responded that there was no connection between the rezoning and the option on the 3-½ acres.
Eight days before Pelleteri visited Babovich, the clerk of the city council had mailed notices to individuals within the city advising them of the date that Babovich had set for the public hearing on the rezoning. Two days after Pelleteri's visit to Babovich, the rezoning passed. After the rezoning, Warner did not approach Pelleteri again about the option on the 3-½ acre tract; this tract has not been sold to date.
Pelleteri never made any formal complaint about the incident. It was not until nearly three years afterward that Pelleteri learned that Warner had not represented a group of doctors, but rather Babovich and Chatelain.
We agree with the commissioner's finding that this was a serious offense involving a violation of two rules of the Code of Professional Responsibility. Disciplinary Rule 1-102(A)(3) states that a lawyer shall not "[e]ngage in illegal conduct involving moral turpitude." Disciplinary Rule 1-102(A)(4) provides that a lawyer shall not "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Babovich misrepresented to Pelleteri the identity of the persons interested in acquiring the 3-½ acre tract. As councilman for the district in which the rezoning was to take place, he could be influential in seeing that the rezoning was successful. He planned to acquire an interest in land that would substantially increase in value if the rezoning was successful and planned to substantially profit from the resale. We agree with the commissioner that this conduct does warrant discipline; the remaining question is the extent of the discipline.
In deciding the appropriate sanction, the circumstances of the offense must be considered. Price, supra. At the time of the offense, Babovich had been on the city council for only three months; the pending zoning change was the first in which he had ever been involved. Babovich's contact with Pelleteri was limited to two conversations: at the luncheon meeting when he told her that it was a group of doctors that was interested in the 3-½ acres and at his house when he told her there was no connection between the rezoning and the sale of the 3-½ acres. Although the value of the 3-½ acres was expected to increase when the adjacent 26-½ acres was rezoned, Warner offered Pelleteri $6.00 per square foot for the 3-½ acres. By contrast, Pelleteri signed the option on the 26-½ acres for $4.69 per square foot.
Mitigating and aggravating factors must also be considered. Price, supra. Mitigating circumstances do not constitute a justification or excuse for the offense in question, but in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability. Louisiana State Bar Association v. Shaheen, 338 So.2d 1347, 1351 (La.1976). We agree with *1073 the commissioner that there are several mitigating factors in this case.
Babovich voluntarily surrendered his position on the city council. Letters written on his behalf by family, friends and professional associates reflect the esteem with which he viewed that position. With the exception of this instant breach of trust, he represented the people of New Orleans East well, working hard on civic projects and councilmanic concerns. Moreover, in voluntarily stepping down, Babovich provided for continued meaningful representation for his district which he could not have provided himself had he been under investigation or indictment.
On February 24, 1986, Babovich also voluntarily surrendered his license to practice law before he was required to do so. By resigning his city council seat and relinquishing his license to practice, Babovich undertook financial hardship, as these positions were his only sources of support.
Moreover, Babovich admitted his own guilt, rather than deny culpability. He also accepted all criminal responsibility for the entire conspiracy as his co-conspirators were not prosecuted, but were given immunity for the same offense for which Babovich pleaded guilty. By pleading guilty, Babovich exposed himself to the possibility of a five year prison term. He was not promised a reduced sentence and he did not know until the sentence was actually pronounced what he would receive. Babovich actually served seventy-five days of his six month term in federal prison before the court reduced his incarceration time.
Another mitigating factor is Babovich's contrition and remorse. The probation officer, who had fourteen years' experience in that capacity, testified persuasively concerning Babovich's remorse and desire to make amends. Babovich has also completed all the community service work required of him.
Additionally, Pelleteri had never formally complained of Babovich's activities and in fact had subsequent dealings with Babovich in his capacity as councilman. Furthermore, the commissioner received many letters attesting to Babovich's character for honesty and dependability. Included among these were petitions signed by large groups of appreciative constituents and satisfied groups of individuals asking for clemency for Babovich.
Prior to this offense, there had been no other incidents which reflected adversely on Babovich's fitness to practice law. There had been no other proceedings instituted by the bar. There had been no other criminal convictions. Babovich had participated significantly in community service work and he had represented clients on a "pro bono publico" basis.
In contrast to mitigating factors, aggravating factors are those which tend to justify an increase in the degree of discipline to be imposed. Significantly in this case, no aggravating factors were introduced.
Although we agree with the commissioner that Babovich's conduct warrants discipline, we disagree that the appropriate sanction is disbarment. The primary purpose of disciplinary action is to protect the courts and the public. No greater penalty should be imposed than that which is required to accomplish this purpose. Louisiana State Bar Association v. Cox, 252 La. 978, 215 So.2d 513, 515 (1968).
Under all the circumstances here reflected, we think that a suspension of twenty-four months from February 24, 1986 would accomplish the disciplinary purpose. All costs of this proceeding shall be paid by respondent Wayne M. Babovich.
CALOGERO, J., concurs and assigns reasons.
LEMMON, J., concurs and assigns reasons.

DISCIPLINARY PROCEEDING
CALOGERO, Justice, concurring.
The majority does not address a motion for summary judgment and reinstatement filed in this Court by respondent which sought to dismiss this case entirely on the premise that the recent United States Supreme Court decision in McNally v. United States, ___ U.S. ___, 107 S.Ct. 2875, 97 *1074 L.Ed.2d 292 (1987), supports defendant's argument that he suffered a conviction and served prison time for conduct which the United States Supreme Court now purportedly would find is not criminal. McNally held that a jury instruction on a substantive mail fraud charge, which merely informed the jury that to convict a person for mail fraud the jury would have to find that the person devised a scheme or artifice to defraud the citizens of a state of their intangible right to have the state's business conducted honestly was improper and did not therefore permit affirmance of a conviction under the federal mail fraud statute, 18 U.S.C. § 1341. The defendant was charged with conspiracy to commit mail fraud. The United States Supreme Court in McNally found that mail fraud is not historically, or by its original Congressional intent, designed to punish people for participation in a scheme to deprive the citizens of a state of the intangible interest in honest representation.
I would concur in a majority refusal to grant summary judgment in this case. Were the Court in the majority opinion to specifically address the motion for summary judgment, I would be inclined to deny it for the reason that the defendant has not sought to upset his conviction in the United States District Court. Furthermore, one essential difference between this case and McNally is that this defendant pled guilty, at a stage in the proceedings at which, but for his plea, the government might yet have amended the indictment and at trial presented evidence of conspiracy to defraud a particular constituent of tangible property rights.
Besides the McNally case, whose existence at least casts question on the conviction, there is in this case in mitigation, as the majority points out, the essential fact that the zoning change went through favorably to respondent's constituent and without her having suffered any loss.
For these reasons, I concur in the decision of the majority.
LEMMON, Justice, concurring.
Respondent was convicted of a crime based on conduct which did not violate any state law. Compare Louisiana State Bar Association v. Levy, 389 So.2d 51 (La. 1980). Moreover, the conduct may no longer be a crime under federal law.[1] See McNally v. United States, ___ U.S.___, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Because of the misconduct outlined in the factual basis stated for the guilty plea, and not necessarily because this particular conviction constitutes a serious offense, I concur in the decision.[2]
NOTES
[1] The conspiracy statute reads as follows:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor. June 25, 1948, c. 645, 62 Stat. 701." 18 U.S.C., § 371.
The mail fraud statute reads as follows:
"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both." 18 U.S.C., § 1341.
Since Babovich's guilty plea, however, the United States Supreme Court has held that the scope of the mail fraud statute does not extend to the intangible right of the citizenry to good government. McNally v. United States, ___ U.S.___, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987).
[2] Section 8(a)(4) of the Articles of Incorporation of the Louisiana State Bar Association states:

"(4) If the Supreme Court should concur with the opinion of the Committee that the crime of which the attorney has been convicted constitutes a serious crime, the Supreme Court may suspend the respondent from the practice of law and order the Committee to institute the necessary disciplinary proceedings, provided, however, that the disciplinary proceedings so instituted will not, unless requested by the accused, be brought to a hearing until all appeals from the conviction are concluded." La.R.S. Title 37, chapter 4appendix.
[3] This option was later assigned to Humedicenter, Inc.
[1] Respondent pleaded guilty to a one-count conspiracy indictment which charged that he conspired to use the mails to defraud the citizens of New Orleans by depriving them of their right to have the City's business conducted free of undue influence. The conduct outlined by the government in establishing a factual basis did not constitute extortion or bribery under state law.
[2] In a disciplinary proceeding based on a criminal conviction, there might be a notice problem if this court were to ignore the conviction and impose a penalty based on other grounds. That consideration is not important here, in view of the fact that there has been no collateral attack on the conviction resulting from the guilty plea.