550 So.2d 188 (1989)
LOUISIANA STATE BAR ASSOCIATION
v.
Stephen R. PEREZ.
No. 87-B-1967.
Supreme Court of Louisiana.
October 23, 1989.
CALOGERO, Justice.
An attorney who was admitted to practice law in this state twenty-seven years ago, one Stephen R. Perez, pled guilty in the United States District Court for the Eastern District of Louisiana, and was thus convicted on June 17, 1987 of making false statements to influence the action of a federally insured bank in violation of Title 18 *189 U.S.C. § 1014. He received a two year sentence, eighteen months of which were suspended, with respondent being placed on probation for five years after serving six months of that sentence. As part of his probation he must make restitution in the sum of $11,061.41 at the rate of $200.00 per month.
To put this attorney's misdeeds in some perspective it is well for us to discuss the two major disciplinary violations that this Court has had to review. Unrelated to the particular offense we review today, this lawyer, in 1985, was found to have been guilty of commingling client's funds, a matter which took place in the latter part of 1981. Relator passed an act of sale and held some $14,500.00 of proceeds that was to have been used to pay off encumbrances on the property being sold. Instead, he used some or all of that money for three to four months before restoring the funds. (He paid the lienholders, cancelled the inscriptions and paid the purchaser an additional $5,000.00 in damages.) In that proceeding, LSBA v. Perez, 471 So.2d 685 (La. 1985), this Court suspended Perez from the practice of law for eighteen months.
Respondent unsuccessfully presented a "black box" defense in that case. He contended that although his bank account balance was shown to have gone well below the amount of the proceeds which ostensibly were being held in trust, he had placed his client's money in a strong box to protect the money from seizure by his ex-wife. He contended there had been some such seizure in the past during the couple's divorce proceedings. The complaint in that instance was initiated by letters dated October 12 and October 15, 1981, and the proceedings concluded with our opinion on June 17, 1985 and the 18 month suspension from the practice of law.
We now learn in these proceedings, that in 1981 and 1982, this attorney was suffering substantial financial reverses because of unfortunate, or unwise, real estate investments.
This brings us to the events which led to his federal conviction in 1987, the matter which gives rise to this bar discipline matter. In the year 1982 Perez was appointed by a district court judge in St. Bernard Parish as notary public to inventory the assets of a vacant succession. Another attorney was appointed as the succession attorney. Perez performed his function as the inventorying notary in 1978 and had no further responsibilities thereafter concerning that succession. When the attorney for the succession obtained authority to sell the succession's interest in certain real estate, he did so, and received $11,061.14 for the succession's interest in that property. He deposited that money in an account in the name of "Succession of Mr. & Mrs. Charles E. Yerkes", in Peoples Bank and Trust Co. of St. Bernard. The succession's attorney was the only authorized signatory on the account. He testified, at the Commissioner's hearing, that it was his obligation under the law, and his intention, to turn those funds over to the State of Louisiana at the end of ten years should he by then have been unable to discover the heir or heirs of Mr. and Mrs. Charles E. Yerkes. From 1978 until 1982 the bank, perhaps through some mix-up, sent the monthly bank statements for the succession account to respondent Perez, who occupied the same law office or building as the succession's attorney for part of that time. (Perez was not in any way affiliated with that attorney in the practice of law.) In August 1982, respondent, troubled by his financial problems, and aware that the bank had been sending him the succession's monthly statements showing an $11,061.14 balance, went to Peoples Bank & Trust and asked a bank officer, who knew and trusted him, if he could withdraw the funds. The officer told him that he could, whereupon he signed his name to a countercheck on behalf of the succession and received a cashier's check in return. The bank permitted this, even though Perez' name did not appear on the account's signature card. Apparently, the bank officer perceived no risk or serious impropriety inasmuch as Perez had been the inventorying notary for the succession assets in 1978. Upon receiving the cashier's check, respondent endorsed it on behalf of the succession and deposited it in his personal account in another bank.
*190 Four years passed before respondent's actions were discovered, during which time he defended himself in independent disciplinary proceedings concerning the commingling matter which resulted in the eighteen month suspension in 1985, referred to above. In 1986, the attorney for the succession decided to move all of his bank accounts out of Peoples Bank and Trust. At that time he discovered that the succession account had been closed and there was no remaining balance. His inquiries resulted in the bank's honoring their obligation to replenish the funds for the succession, which they had negligently permitted Perez to withdraw. When Perez was unable to make the bank whole on this $11,061.14 loss, the bank president reported the matter to the F.B.I., and the federal criminal prosecution which resulted in respondent's guilty plea thereupon ensued. After respondent was released from federal prison, he commenced, as part of his probation, paying $200.00 per month restitution on the $11,061.14 debt. With minor deviation he has complied with the restitution order and has by now repaid about $4,000.00. If he pays and remains on schedule the full $11,061.14 debt will be paid by November 22, 1992. The $11,061.14 loss was borne in part by the bank and in part by their bonding company, Underwriters Adjusting Company. The bank had a $5,000.00 deductible. Thus the first $6,061.14 is being remitted to the bonding company under a subrogation agreement and the remaining $5,000.00 will be reimbursed to the bank thereafter.
Respondent's suspension from the practice of law arising out of his earlier disciplinary proceeding in No. 83-B-1836 concluded in January of 1987. According to the defendant, however, he did not seek reinstatement until June of 1989. (Presumably, it was only then that he paid his bar dues and/or costs assessed against him in No. 83-B-1836.) His testimony, therefore, is that he has not practiced law from the time that he was suspended in mid-1985 until June 1989.
When disciplinary proceedings involve an attorney convicted of a crime, the sole issue to be decided by the Court is whether the crime warrants discipline, and if so, the extent thereof. Louisiana State Bar Assoc. v. Garraway, 520 So.2d 400 (La.1988); Louisiana State Bar Assoc. v. Babovich, 515 So.2d 1070 (La.1987). The conviction is conclusive evidence of guilt. LSBA Arts. of Inc. Art. 15, § 8(a)(7), (c). The discipline to be imposed in a given case depends on the seriousness of the offense and the extent of aggravating and mitigating circumstances. Louisiana State Bar Assoc. v. Rosenthal, 515 So.2d 797 (La. 1987); Louisiana State Bar Assoc. v. Price, 495 So.2d 1311 (La.1986).
In Louisiana State Bar Assoc. v. Hinrichs, 486 So.2d 116 (La.1986), we set out guidelines for imposing disciplinary sanctions against attorneys in cases involving the commingling and conversion of client's funds. While this case does not involve commingling and conversion per se, it does deal with conduct not too dissimilar, namely, the taking of funds belonging to another for one's own use. Furthermore, even though this case does not, strictly speaking, involve the attorney-client relationship, it was a situation somewhat related to the practice of law in which respondent used the occasion (of a court appointment as inventorying notary in a succession proceeding) to misappropriate monies to the detriment of the succession and/or the state. Therefore, the guidelines established in Hinrichs are pertinent here. We stated in Hinrichs that:
(i)n a typical case of disbarment ... one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client's interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings. (Citations omitted.)
Respondent admitted that he illegally withdrew the funds for his own personal *191 use. The actions were committed in bad faith and were inconsistent with the interest of the succession. The conduct required fraudulent actions by Respondent in order to obtain the desired result, with the offense remaining undetected for four years. Despite respondent's assertions that, when he initially withdrew the funds he intended to replenish the account, he made no effort to do so from the time of the withdrawal until the discovery four years later. As yet, he has not repaid all of the money withdrawn, but is making an effort to do so.
The ABA Standards for Imposing Lawyer Sanctions provide aggravating and mitigating factors for consideration when imposing sanctions against an attorney. Several aggravating factors must be considered in this case: prior disciplinary offense; dishonest or selfish motive; and vulnerability of victim. As already stated, respondent has previously been suspended from the practice of law for a period of eighteen months on the charge of commingling client's funds. The present offense, committed in 1982 while he was being investigated for the 1981 commingling offense, involved the commission of fraudulent acts for respondent's own financial benefit, for which he was convicted on federal charges. Furthermore, because the succession was vacant, with no one laying claim to the funds as it turned out, respondent was able to get away with this misconduct for a period of four years before it was detected.
A couple of mitigating factors outlined by the ABA Standards are present: cooperative attitude during disciplinary proceedings; and remorse. In addition, respondent contends that he only asked to withdraw the funds from the bank, and was allowed to do so, without the necessity of any fabrication on his part. He has apologized for his actions, and expresses remorse, and is in the process of making restitution, prompted surely at least in part by the threat of his federal probation's being revoked. Yet, respondent has not offered anything more in the way of mitigating circumstances for us to consider. He has not presented character evidence in this proceeding, although we note that in his previous disciplinary proceeding, he had the benefit of having three judges testify on his behalf.
Respondent does not suggest that personal or emotional problems contributed to his actions, only that he was experiencing financial setbacks. In addition, he has practiced law since 1962 without any instances of misconduct until the 1981 and the 1982 offenses.
Respondent has expressed remorse for his conduct. This, however, in consideration with the other mitigating factors, cannot detract from the serious nature of this misconduct. The offense committed by respondent, a virtual theft of $11,061.14 ultimately to belong either to the heir or heirs of the decedents or to the State of Louisiana, is the gravest form of professional misconduct. Louisiana State Bar Assoc. v. Selenberg, 270 So.2d 848 (La.1973); cert. denied, 414 U.S. 1021, 94 S.Ct. 443, 38 L.Ed.2d 312 (1973).[1] It is of little solace that the succession did not ultimately sustain a loss. The account was immediately replenished by the bank upon its learning of the facts, but the bank and its bonding company have not yet been fully reimbursed. The fact remains that funds were wrongfully taken by respondent; the succession was the victim at least initially, and the ultimate victim turned out to be the bank and its bonding company.
Respondent has committed, and was convicted of, a serious offense that reflects adversely on his honesty, trustworthiness and fitness as a lawyer, and one which *192 affects the public's trust in the legal profession. Code of Professional Responsibility, Rule 8.4(b). The interest of the public requires disbarment in matters involving this type of conduct, especially when the mitigating factors are not strong. "High standards of honesty have been erected for those engaged in the legal profession and all members of the profession are required to take an oath to uphold these ideals of exemplary conduct upon their admission to the Louisiana Bar." Louisiana State Bar Assoc. v. Philips, 363 So.2d 667 (La.1978).
Considering the facts, circumstances and the graveness of respondent's misconduct, we determine that the appropriate discipline to be imposed in this case is disbarment.

Decree
For the reasons assigned it is ordered, adjudged and decreed that the name of Stephen R. Perez be stricken from the roll of attorneys and that respondent's license to practice law in the State of Louisiana be revoked and cancelled at his cost, with readmission conditioned on proof of full restitution of the funds misappropriated.
ATTORNEY DISBARRED.
NOTES
[1] Even though charges were not brought in state court, respondent's conduct may well meet the elements of theft under state law. R.S. 14:67 provides: "Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential." Despite respondent's allegations that he initially intended to give back the money, prior to discovery of his misdeed and after four years he had failed to replenish even a portion of the funds.