ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 
 *
 

 | T This disciplinary matter arises from three separate sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, W. Scott Maxwell, an attorney licensed to practice law in Louisiana but currently on interim suspension based upon his conviction of a serious crime.
 
 In re: Maxwell,
 
 05-2141 (La.11/16/05), 914 So.2d 1112. While we find all of the charged misconduct was proven by clear and convincing evidence, for the following reasons, we conclude that, standing alone, respondent’s misconduct in
 
 *669
 
 the first set of formal charges warrants permanent disbarment.
 

 UNDERLYING FACTS AND PROCEDURAL HISTORY
 

 00-DB-036
 

 The Ward Matter
 

 In October 1995, William Ward died, survived by his wife, Gladys, and their two adult children, Wanda and Warren. In November 1995, Gladys issued two checks to respondent totaling $9,540 as attorney’s fees for handling William’s succession. Respondent did not probate William’s will or file the succession documents, and instead converted the funds paid to him by Gladys to his own use.
 

 |2In February 1996, four months after William’s death, Gladys died, and respondent assumed the representation of her estate. Most of William and Gladys’ assets were transferred to their children outside of the estate pursuant to the terms of a trust, but it was necessary for respondent to collect the proceeds of various life insurance policies and to sell the Ward family home. Respondent agreed to handle this matter for a fee of 3% of the gross estate; however, he actually paid himself 5% of the value of the estate, or $33,544.47 for his representation. Respondent did not open Gladys’ succession or probate her will, and did not otherwise complete the work for which he was paid.
 

 After Gladys’ death, respondent befriended Wanda Ward, who suffers from a seizure disorder and mental retardation. Although respondent knew Wanda was incapable of managing her own financial affairs, he persuaded her to place him on a retainer of $750 per month. Pursuant to this arrangement, Wanda wrote numerous checks to respondent in various amounts totaling $40,688.77 from September 20, 1996 through January 15, 1998. Notations on some of the checks indicate they were payment for bookkeeping services, financial/investment advice, and attorney’s fees. Respondent balanced Wanda’s checkbook and performed other personal errands and services, but did not provide any legal services to her.
 

 In July 1997, without Wanda’s knowledge or consent, respondent requested a portion of her investments be liquidated, purportedly for the purpose of prepaying her final estate expenses. Pursuant to these directions, the investment company sent a check in the amount of $38,187.11 to Wanda, which she endorsed over to respondent. However, respondent performed no legal services and incurred no expenses concerning Wanda’s final estate.
 
 [1]
 

 | ¡¡In October 1998, Abbeville attorney J. Isaac Funderburk filed complaints against respondent with the ODC on behalf of Wanda and Warren.
 
 [2]
 
 In March 2000, the ODC filed the formal charges in 00-DB-036. The ODC alleged respondent’s conduct in the Ward matter violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.2(a) (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client),
 
 *670
 
 1.4 (failure to communicate with a client), 1.5(a) (a lawyer’s fee shall be reasonable), 1.5(c) (contingency fee arrangements), 1.7(b) (a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer’s responsibilities to another client or to a third person, or by the lawyer’s own interests), 1.8(a) (a lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client), 1.8(b) (a lawyer shall not use information relating to the representation of a client to the disadvantage of the client unless the client consents after consultation), 1.8(c) (a lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client), 1.14(a) (client under a disability), 1.15 (safekeeping property of clients or third persons), 1.16(d) (obligations upon termination of the representation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act, especially one that reflects adversely on the lawyer’s honesty, trustworthiness or fitness as a lawyer in other respects), 8.4(c) (engaging in conduct involving ^dishonesty, fraud, deceit, or misrepresentation), and 8.4(g) (failure to cooperate with the ODC in its investigation).
 

 In May 2000, respondent answered the formal charges and denied any misconduct. The matter was then set for a hearing. Prior to the hearing date, respondent was arrested on June 9, 2000 by the Louisiana State Police and charged with twenty-two counts of felony theft totaling $121,960.35, one count of money laundering in excess of $100,000, and one count of exploitation of the infirmed, arising out of his handling of the Ward matter. Respondent subsequently moved for a continuance without date of the hearing on the formal charges in 00-DB-036. The hearing committee granted the continuance and ordered the hearing to be re-set at such time as the criminal matter was concluded.
 

 On August 1, 2005, respondent pleaded no contest to one count of felony theft over five hundred dollars, a violation of La. R.S. 14:67(B)(1). Pursuant to the provisions of La.Code Crim. P. art. 893, the court deferred the imposition of sentence for five years and placed respondent on active, supervised probation for that period. The court also imposed special conditions of probation, including the payment of restitution in the amount of $30,000 to Gladys’ estate and $45,000 to Wanda.
 
 [3]
 

 Following respondent’s criminal conviction, the formal charges in 00-DB-036 were stayed. The stay was lifted in 2008, when 00-DB-036 was consolidated for hearing with 08-DB-001, the third set of formal charges filed against respondent.
 

 \rflS-DB-08j
 

 The Blanchard Matter
 

 Respondent is not registered as a patent attorney and therefore cannot represent applicants before the United States Patent and Trademark Office. Nevertheless, in June 2002, respondent collected $750 from Trohn Peter Blanchard in connection with a patent matter. During the course of the representation, respondent failed to adequately communicate with Mr. Blanchard. When he was discharged by Mr. Blanchard, respondent refunded $600 of Mr. Blanchard’s $750 fee, and failed to return
 
 *671
 
 Mr. Blanchard’s file to him. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed against him by Mr. Blanchard, necessitating the issuance of a subpoena to compel his sworn statement.
 

 In December 2003, the ODC filed the formal charges in 03-DB-084. The ODC alleged respondent’s conduct in the Blanchard matter violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a), 1.2(a), 1.4, 1.5(a), 1.5(f)(6) (failure to refund an unearned fee), 1.15, 1.16(a) (declining or terminating the representation of a client), 1.16(d), 8.1(c), 8.4(a), 8.4(c), and 8.4(g).
 

 In January 2004, respondent answered the formal charges and denied any misconduct. The matter was then set for a hearing before the hearing committee, which was conducted in March 2004. The hearing committee issued its report in December 2006, finding that some, but not all, of the alleged rule violations were proven by clear and convincing evidence and recommending respondent be suspended from the practice of law for one year, with all but thirty days deferred. The committee further recommended respondent refund $150 to Mr. Blanchard, that respondent enroll in Ethics School, and that a practice monitor be appointed to supervise his law practice.
 

 J£8-DB-001
 

 Count I
 
 — The
 
 Davis Matter
 

 In September 2002, Henry Davis retained respondent to represent him in a community property matter, paying him $1,150. Thereafter, respondent assured Mr. Davis that a court date had been set, although he had taken no action on Mr. Davis’ behalf and had never filed any pleadings in the matter. Furthermore, respondent promised to refund Mr. Davis’ fee by November 2005; however, he failed to do so.'
 
 [4]
 

 The ODC alleged respondent’s conduct in the Davis matter violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a), 1.3, 1.4, 1.5(f) (failure to refund an unearned fee), 1.15, and 1.16(d).
 

 Count II
 
 — The
 
 Hatton Matter
 

 In January 2000, Johnny and Vickie Hatton retained respondent to resolve their debt collection matter with Greentree Financial Company. Respondent subsequently advised his clients he had negotiated a reduction of their debt to $8,788, the payment of which would extinguish their loan obligation. In May 2000, Mrs. Hatton issued her check in that amount payable to respondent. Respondent did not deposit the check into his client trust account; rather, he cashed the check and disbursed two payments totaling $3,000 to the finance company. Thereafter, respondent took no further action on behalf of his clients and retained the balance of the funds without his clients’ knowledge or consent.
 
 [5]
 
 Respondent also failed to return numerous calls |7and letters from Mrs. Hatton requesting an accounting and information as to the status of the legal matter. In August 2006, Mr. and Mrs. Hatton were
 
 *672
 
 informed their Greentree account had been purchased by Portfolio Recovery Associates, LLC. The account balance at that time was $16,477.84.
 

 The ODC alleged respondent’s conduct in the Hatton matter violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a), 1.3, 1.4,
 
 1.5(f),
 
 1.15, 8.4(a), 8.4(c), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
 

 Count III
 
 — The
 
 LeBouef Matter
 

 In 2004, Emerite LeBouef retained respondent to represent her grandson, Glenn Ray LeBouef, in criminal cases pending against him in St. Mary, Lafayette, and Terrebonne Parishes. In the course of the representation, Ms. LeBouef delivered to respondent six checks totaling $56,863 to cover his attorney’s fees and the restitution to be paid to her grandson’s victims in the criminal cases. Rather than deposit these sums into a client trust account, respondent endorsed Ms. LeBouefs checks and cashed them or exchanged them for cashier’s checks. With the exception of one payment of $2,287.50 forwarded to the Lafayette Parish District Attorney’s Office, respondent did not remit the restitution due to Mr. LeBouefs victims and did not otherwise complete the representations he was retained to handle.
 
 [6]
 
 Moreover, following respondent’s interim suspension from the practice of law on November 16, 2005, he failed to advise his client or the court he could not practice law, and he did |Rnot file a motion to withdraw as Mr. LeBouefs counsel of record until January 23, 2006.
 

 The ODC alleged respondent’s conduct in the LeBouef matter violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a), 1.3, 1.4, 1.15, 1.16(a), 3.3 (candor toward the tribunal), 5.5(a) (engaging in the unauthorized practice of law), 8.4(a), 8.4(c), and 8.4(d). The ODC also alleged respondent’s conduct constituted a violation of Supreme Court Rule XIX, § 26, which requires a lawyer who is placed on interim suspension to notify all clients, adverse parties, and opposing counsel of his suspension and his disqualification to act as a lawyer after the effective date of the court’s order. The rule further requires the lawyer to return client property, refund unearned fees, and withdraw from pending representations.
 

 Count TV
 
 — The
 
 Stout Matter
 

 As previously noted, respondent was placed on interim suspension by order of this court rendered on November 16, 2005. In May 2006, Gloria Castille Stout paid respondent the sum of $3,000 to handle a legal matter involving title to succession property.
 
 [7]
 
 Mrs. Stout gave respondent court records and other documents relating to the property, and several days later, respondent told her he would need an additional $30,000 to open the succession. Mrs. Stout declined to pay respondent any additional money, and she requested a refund of the $3,000 she had paid.
 
 [8]
 
 Respon
 
 *673
 
 dent refused to comply with Mrs. Stout’s request, prompting her to file a complaint with the ODCjgin June 2006. Respondent failed to reply to the complaint, necessitating the issuance of a subpoena to compel his sworn statement.
 
 [9]
 

 In September 2006, Mrs. Stout filed a claim against respondent with the Louisiana State Bar Association Client Assistance Fund.
 
 [10]
 
 In response, respondent asserted he simply agreed to read over the documents provided by Mrs. Stout, “explain” them to her, and advise her if she needed the services of an attorney. He further indicated the $8,000 paid by Mrs. Stout was for “research.”
 

 The ODC alleged respondent’s conduct in the Stout matter violated the following provisions of the Rules of Professional Conduct: Rules 1.4, 1.15, 1.16(d), 3.2 (expediting litigation), 5.5(a), 8.1(c), 8.4(a), 8.4(b), 8.4(c), and 8.4(d).
 

 Count V
 
 — The
 
 Leon Matter
 

 Joyce Leon retained respondent to represent her in a personal injury matter. In August 2001, respondent filed suit on behalf of Mrs. Leon in state court, naming as the defendant a Native American Indian tribe which has sovereign immunity from suit in state and federal court. Respondent belatedly transferred the suit to Tribal Court, but he thereafter failed to effect service of process on the defendant. In May 2003, the suit was dismissed on the defendant’s exceptions of insufficiency of service of process and prescription. Respondent did not inform Mrs. Leon of the adverse judgment, nor did he advise her of her right to appeal the decision.
 

 |1ftThe ODC alleged respondent’s conduct in the Leon matter violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a), 1.3, 1.4, 3.1 (meritorious claims and contentions), 3.2, 3.3, 8.4(a), and 8.4(d).
 

 Count VI
 
 — Failure
 
 to Cooperate
 

 Respondent was served by certified mail with the complaints filed against him in connection with Counts I — III,
 
 supra.
 
 Respondent failed to reply to the complaints, necessitating the issuance of a subpoena to compel his sworn statement. During his sworn statement in June 2006, respondent made false and misleading statements under oath.
 

 The ODC alleged respondent’s conduct in this matter violated the following provisions of the Rules of Professional Conduct: Rules 8.1(c), 8.4(a), and 8.4(c).
 

 Consolidation of 00-DB-036 and 08-DB-001
 

 In January 2008, the ODC filed six counts of formal charges against respondent in 08-DB-001. Respondent answered the formal charges in February 2008 and denied any misconduct. Following the filing of respondent’s answer, the disciplinary board issued an order dissolving the stay in the first set of formal charges, 00-DB-036, and consolidating that matter with the formal charges in 08-DB-001. The matters were then set for a hearing before the hearing committee, which was conducted in June 2008 and
 
 *674
 
 November 2008. The hearing committee issued its report in the consolidated matters in February 2009, finding most of the alleged rule violations were proven by clear and convincing evidence and recommending respondent be permanently disbarred.
 

 _|_^Disciplinary Board Recommendation
 

 00-DB-036 & 03-DB-08Í & 08-DB-001
 

 The three sets of formal charges were consolidated for oral argument before a panel of the disciplinary board on July 30, 2009. On December 8, 2009, the disciplinary board filed its 76-page report in this court, recommending respondent be permanently disbarred. The report focused primarily on what the board determined to be the most egregious allegations of misconduct, namely respondent’s theft of funds from Wanda Ward in 00-DB-036 and his unauthorized practice of law in the Stout matter in 08-DB-001. All of the remaining allegations were discussed in an appendix.
 
 [11]
 

 Regarding the Ward matter, the board noted the hearing committee was presented with conflicting evidence regarding respondent’s relationship with Wanda and the services he performed. On one hand, respondent testified he performed personal services for Wanda, for which he was paid on retainer. On the other hand, the ODC’s witnesses testified respondent used his position of familiarity with the Ward family to steal from Wanda, whom he knew had cognitive disabilities, without providing any meaningful professional services. Faced with these conflicting versions, the committee determined the more credible explanation was respondent stole nearly $80,000 from Wanda and otherwise charged her for legal services he never performed. The board found this determination is supported by the record, particularly considering that respondent was convicted of committing theft from Wanda. Thus, these facts have been conclusively proven against respondent.
 

 Likewise, with respect to the issue of respondent’s unauthorized practice of law in the Stout matter, the board noted the hearing committee was faced with sharply | ^conflicting versions of respondent’s relationship with the Stouts and the services he was supposedly to perform. According to the Stouts, they hired respondent for $3,000 to serve as an attorney. According to respondent, he was hired merely to review documents and advise the Stouts whether they needed to hire an attorney. Faced with this conflicting evidence and testimony, the committee determined the more credible explanation was respondent engaged in the unauthorized practice of law and also charged the Stouts for legal services he never performed. The board found this credibility determination is not clearly wrong.
 

 In sum, the board determined respondent stole $78,875.88 from Wanda and charged the Stouts $3,000 for legal services when he was suspended from the practice of law. This conduct violated Rules 1.3, 1.4, 1.5(a), 1.7(b), 1.8(a), 1.8(b), 1.14(a), 1.15, 1.16(d), 5.5(a), 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct.
 

 The board determined respondent violated duties owed to his clients, the legal system, and the profession. By its very nature, his conduct was knowing and intentional, and particularly as regards his theft from a disabled client, caused serious and substantial injury. Considering the ABA’s
 
 Standards for Imposing Lawyer
 
 
 *675
 

 Sanctions,
 
 the baseline sanction for respondent’s misconduct is disbarment.
 

 The board determined the following aggravating factors are present: a dishonest or selfish motive, indifference to making restitution, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law (admitted 1974), and illegal conduct. The board found no mitigating factors are present.
 
 [12]
 

 | ^Considering respondent’s misconduct in light of the permanent disbarment guidelines and the prior jurisprudence of this court, the board recommended respondent be permanently disbarred.
 

 Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
 

 DISCUSSION
 

 Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent’s crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E);
 
 In re: Boudreau,
 
 02-0007 (La.4/12/02), 815 So.2d 76;
 
 Louisiana State Bar Ass’n v. Wilkinson,
 
 562 So.2d 902 (La.1990). The discipline to be imposed depends on the seriousness of the offense and the extent of the aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Perez,
 
 550 So.2d 188 (La.1989).
 

 In the instant case, respondent stands convicted of theft over five hundred dollars. This crime is a felony under state law and clearly warrants serious discipline. The only issue to be resolved by this court is the appropriate sanction for respondent’s misconduct.
 

 Based upon the testimony and documentary evidence in the record, we find the victims of respondent’s theft were his mentally disabled client, Wanda Ward, and her mother, Gladys Ward. We further find respondent took advantage of Wanda, whom [ [4he knew was incapable of managing her own financial affairs due to her disability.
 
 [13]
 
 Under these circumstances, disbarment is clearly appropriate. However, in their respective reports, the hearing committee and the disciplinary board have concluded respondent’s offenses are so egregious that he should be permanently prohibited from applying for readmission to the bar.
 

 We agree. In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might result in permanent disbarment. Respondent’s conduct falls squarely within the scope of Guideline 1 (repeated or mul
 
 *676
 
 tiple instances of intentional conversion of client funds with substantial harm). We would be remiss in our constitutional duty to regulate the practice of law if we did not impose that sanction here.
 

 Accordingly, we will accept the disciplinary board’s recommendation and impose permanent disbarment.
 
 [14]
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committees and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that the name of W. Scott Maxwell, Louisiana Bar Roll number 9074, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further [,fiordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent shall make restitution to all clients subject of the formal charges and repay the Louisiana State Bar Association’s Client Assistance Fund any amounts paid to claimants on his behalf. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10. 1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 *
 

 Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.
 

 [1]
 

 . At the hearing on the formal charges, respondent testified he has spent these funds.
 

 [2]
 

 . In his response to the complaints, respondent contended Wanda hired him to handle her affairs because she did not trust her brother and had no one else to turn to. Respondent also stated Wanda paid him a retainer because she insisted he be paid for "any and all time” he spent on her behalf performing services that included taking her to the bank, the post office, and the grocery store, balancing her check book, and caring for her cat when she went out of town.
 

 [3]
 

 . At the formal charge hearing, Mr. Funder-burk testified he received "a couple of money orders” from respondent shortly after he pled guilty, but since that time, he has received no further restitution payments. Respondent estimated he has paid approximately $1,200 in restitution to Gladys’ estate and $1,200 to Wanda.
 

 [4]
 

 . Al the hearing on the formal charges in 2008, respondent claimed he earned the fee paid by Mr. Davis but admitted he "did tell Mr. Davis that [he] would pay him his money back" because they are "friends.” Respondent further stated he had not repaid Mr. Davis because “I haven’t been working since 2005, so I haven’t had the money to pay [him] back.”
 

 [5]
 

 . At the hearing on the formal charges in 2008, respondent admitted the $5,788 he was holding to pay Mr. and Mrs. Hatton's debt had "probably been used to pay expenses .... mine and family's.”
 

 [6]
 

 . At the formal hearing, Mr. LeBouef testified respondent was also retained to represent him in a criminal case pending in East Baton Rouge Parish, which representation respondent did complete. Respondent paid restitution in that matter totaling $8,500 on behalf of Mr. LeBouef.
 

 [7]
 

 . At the time Mrs. Stout paid respondent to handle her legal matter, she was not aware of his suspension from the practice of law.
 

 [8]
 

 .Before the hearing committee, Mrs. Stout testified that she told respondent he could keep a reasonable fee for the work he had done, but she did not believe he was entitled to the full amount of the $3,000 fee. Both Mrs. Stout and her husband testified respondent's work amounted to nothing more than organizing the court records and other documents which Mrs. Stout had previously provided to respondent; nevertheless, they were both clear that they came to respondent be
 
 *673
 
 cause they needed legal services and they knew him to be a lawyer.
 

 [9]
 

 . During his sworn statement, respondent denied his conduct in this matter constituted the unauthorized practice of law. He testified he charged Mrs. Stout a flat fee of $3,000 "just to review the documents and give [her] my thinking,” which he likened to the work of an "investigator.” Respondent further stated, "I didn’t appear in court. I didn’t file anything. I just looked over what was handed to me as a favor" to Mrs. Stout’s husband, who was a former client of respondent's.
 

 [10]
 

 . The Client Assistance Fund subsequently reimbursed Mrs. Stout $3,000.
 

 [11]
 

 . Analyzing this misconduct, which it found was proven by clear and convincing evidence, the board found further support for its recommendation of permanent disbarment.
 

 [12]
 

 . Although respondent has no prior disciplinary record, the board expressly refused to find that fact in mitigation, reasoning respondent's interim suspension “is arguably the functional equivalent of a disciplinary record.” This is an incorrect statement of the law. Moreover, the board's finding is puzzling, considering that a solitary mitigating factor would not likely have had any impact upon its recommendation in the face of the overwhelming evidence of misconduct in this record.
 

 [13]
 

 . During oral argument before this court, respondent's counsel’s primary assertion was there was not clear and convincing evidence of misconduct in the Ward matter because the ODC did not produce Wanda Ward to testify. However, as earlier stated, these disciplinary proceedings involve respondent's conviction of a crime, which is conclusive evidence of his guilt. Moreover, to the extent that Wanda's disability was in question, that issue was proven by the testimony and the documentary evidence in the record.
 

 [14]
 

 . The disciplinary board's recommendation suggests respondent be permanently disbarred for his unauthorized practice of law in the Stout matter, as well as for his misconduct in the remaining counts of the formal charges. In light of our disposition, we do not find it necessary to address these counts.