*837
 
 ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 
 *
 

 | t This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Mazen Younes Abdallah, an attorney licensed to practice law in Louisiana but currently on interim suspension based upon his conviction of a serious crime.
 
 In re: Abdallah,
 
 08-2018 (La.9/9/08), 990 So.2d 18.
 

 UNDERLYING FACTS
 

 In October 2007, respondent was indicted by a federal grand jury in the Southern District of Texas, Houston Division, on numerous counts of conspiracy to commit health care fraud, conspiracy to commit money laundering, and violations of the federal anti-kickback statute. According to the indictment, beginning in
 
 *838
 
 June 2006, respondent was an owner and operator of Americare Medical Service (“Americare”), a Houston company that transported Medicare and Medicaid dialysis patients to and from them dialysis treatments. From 2002 to 2007, Ameri-care falsely and fraudulently represented the medical conditions of these patients in order to bill Medicare and Medicaid for ambulance transports to regularly-scheduled non-emergency dialysis treatments, when in fact Americare well knew that the patients did not qualify for these transports under federal ^guidelines.
 
 [1]
 
 All told, Americare falsely billed Medicare and Medicaid more than $20 million and was paid more than $7 million for regularly scheduled non-emergency ambulance transports to dialysis treatments. Respondent was also charged with offering to pay remuneration to a dialysis patient, identified in the indictment as R.D., in order to induce R.D. to use Americare for transportation to and from dialysis treatment, and with conspiring with other defendants to launder the proceeds of the Americare scheme.
 

 Some of the counts against respondent were dismissed prior to his trial, including the count alleging a violation of the federal anti-kickback statute and one of the money laundering charges. Respondent’s trial commenced on April 14, 2008, and on May 22, 2008, the jury found him guilty of one count of conspiracy to defraud and falsely bill Medicare and Medicaid. The jury found him not guilty of the remaining counts, which included the substantive health care fraud counts and the second money laundering charge.
 

 On May 12, 2009, respondent was sentenced to serve thirty months in federal prison. He was also ordered to make restitution to Medicare and Medicaid in the total amount of $637,425.79.
 
 [2]
 
 On June 17, 2010, the United States Court of Appeals for the Fifth Circuit affirmed respondent’s conviction.
 

 | «DISCIPLINARY PROCEEDINGS
 

 In September 2008, the ODC filed formal charges against respondent, alleging that his conduct, as set forth above, violated the following provisions of the Rules of Professional Conduct: Rules 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
 

 Respondent filed an answer to the formal charges, denying any misconduct and indicating he was in the process of attempting to have his conviction overturned. The disciplinary proceedings were stayed until respondent’s conviction became final. This matter then proceeded to a formal hearing in mitigation,
 
 [3]
 
 conduct
 
 *839
 
 ed by the hearing committee in November 2010.
 

 Hearing Committee Report
 

 After considering the testimony and evidence presented at the hearing, the hearing committee made the following factual findings:
 

 In the spring of 2006, respondent and a friend formed a company named Abdallah and Smith, LLC. The company’s first and primary acquisition was Americare. Shortly thereafter, respondent was indicted in the United States District Court for the Southern District of Texas on charges of conspiracy to defraud the Medicare/Medicaid programs and falsely bill Medicare/Medicaid. The crux of the indictments was that respondent was filing claims with Medicare and Medicaid for reimbursement of the transportation of dialysis patients who did not qualify for said transportation under the Medicare/Medicaid guidelines. Respondent went to trial on these counts and, on May 22, 2008, the jury found him |4guilty of conspiracy to commit health care fraud. Respondent was sentenced to serve thirty months in federal prison and was required to make restitution in the amount of $637,000. In furtherance of the restitution order, Americare forfeited $42,000. Upon his release, respondent was also required to serve three years of supervised probation. Respondent appealed his conviction to the Fifth Circuit Court of Appeals, which affirmed the decision of the United States District Court.
 

 Based on these facts, the committee determined respondent’s underlying crime violated Rules 8.4(b) and 8.4(c) of the Rules of Professional Conduct. In making this determination, the committee gave great weight to the April 29, 2009 memorandum and opinion of United States District Judge Lee Rosenthal, which was issued after respondent sought a review of the jury’s decision. The district judge indicated that respondent knowingly and willingly conspired to defraud Medicare and Medicaid by recruiting and paying individuals to utilize Americare’s services even though these individuals were not qualified to do so under federal law. Despite respondent’s argument that he could not be convicted of any crime because he was not involved in the day-to-day operations and was unaware of Americare’s actions, the district judge pointed out that respondent knowingly recruited ineligible clients before and after purchasing Ameri-care, citing specific evidence seized from respondent’s home and an audio tape of respondent. The district judge also pointed out that respondent obtained false orders from physicians certifying that medical necessity requirements were met for the medical transportation of patients under Medicare/Medicaid before and after the purchase of Americare. Respondent’s testimony at the formal hearing was solely centered on his naiveté and unawareness of the actions of Americare, which is inconsistent with the vast amount of testimony and evidence presented at his criminal trial. In summary, the committee found there was clear, unequivocal evidence that 1 ¿¡respondent knew of, acquiesced in, and participated in illegal activity perpetrated by Americare both before and after he purchased the company.
 

 After considering the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the committee determined that the baseline sanction for respondent’s misconduct is disbarment. In aggravation, the committee
 
 *840
 
 found that (1) respondent knowingly engaged in obvious and intentional acts to defraud the federal government and (2) he failed to acknowledge or take responsibility for his actions that led to his conviction. In mitigation, the committee found the following factors: absence of a prior disciplinary record, absence of a pattern of misconduct, and character or reputation.
 
 [4]
 

 Under these circumstances, the committee recommended respondent be disbarred. The committee’s public member dissented, stating that in light of respondent’s “serious, criminal transgressions and apparent lack of remorse, I steadfastly remain with my recommendation of permanent disbarment.”
 

 The ODC filed an objection to the hearing committee’s recommendation and agreed with the dissenting member that permanent disbarment is appropriate.
 

 Disciplinary Board Recommendation
 

 After review, the disciplinary board determined that the hearing committee’s factual findings do not appear to be manifestly erroneous. The board also determined the committee correctly applied the Rules of Professional Conduct to the facts of this matter.
 

 The board further determined respondent knowingly and intentionally violated a duty owed to the public by engaging in a criminal act designed to defraud a government agency for the benefit of his company. His conduct caused factual serious injury of more than $600,000. After considering the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined the baseline sanction is disbarment.
 

 In aggravation, the board found a dishonest or selfish motive, refusal to acknowledge the wrongful nature of the conduct, and illegal conduct. In mitigation, the board found the following factors: absence of a prior disciplinary record, inexperience in the practice of law (admitted 2004), character or reputation, and imposition of other penalties or sanctions.
 

 After considering respondent’s conduct in light of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E, the board determined that respondent’s conduct falls within Guideline 6, which states that permanent disbarment may be warranted in instances of “[insurance fraud, including but not limited to staged accidents or widespread runner-based solicitation.” The board reasoned that this guideline applies because respondent’s company knowingly submitted reimbursement requests to Medicare for clients who were not qualified for the service and because respondent solicited unqualified clients to switch to Americare in exchange for compensation. Noting respondent argued that Guideline 6 does not apply because he was found not guilty of the fraud charges, the board countered that, in
 
 In re: Kirchberg,
 
 03-0957 (La.9/26/03), 856 So.2d 1162, this court held that
 

 the guidelines are illustrative in nature and do not constitute an exclusive list of conduct for which an attorney may be permanently disbarred. Moreover, in assessing discipline in the case of an attorney who has been convicted of a crime, we have often looked beyond the title of the offense to the facts of the conviction to determine the appropriate sanction.
 

 Concluding that respondent’s conduct is strikingly similar to “runner-based solicitation,” the board recommended respondent be permanently disbarred. The |7board further recommended respondent be or
 
 *841
 
 dered to make restitution in accordance with his criminal sentence.
 

 Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
 

 DISCUSSION
 

 Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent’s crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E);
 
 In re: Boudreau,
 
 02-0007 (La.4/12/02), 815 So.2d 76;
 
 Louisiana State Bar Ass’n v. Wilkinson,
 
 562 So.2d 902 (La.1990). The discipline to be imposed in a given case depends upon the seriousness of the offense, the circumstances of the offense, and the extent of the aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Perez,
 
 550 So.2d 188 (La.1989).
 

 In May 2008, respondent was found guilty of one count of conspiracy to defraud and falsely bill Medicare and Medicaid. Based on this conviction, respondent has violated the Rules of Professional Conduct as alleged in the formal charges.
 

 The record supports a finding that respondent acted knowingly and intentionally. He violated a duty owed to the public, and he caused significant harm to the Medieare/Medicaid system. The record further supports the aggravating and mitigating factors found by the disciplinary board. Additionally, |sin aggravation, respondent engaged in a pattern of misconduct.
 
 [5]
 
 The baseline sanction for this misconduct is disbarment.
 

 Having determined that disbarment is the baseline sanction in this matter, we now consider whether respondent’s misconduct is so egregious as to warrant the imposition of permanent disbarment. As noted by the board, in
 
 In re: Kirchberg,
 
 03-0957 (La.9/26/03), 856 So.2d 1162, we established that when an attorney has been convicted of a crime, we often look beyond the title of the offense to the facts of the conviction to determine the appropriate sanction. Here, the evidence introduced at respondent’s criminal trial, as presented in the district judge’s April 29, 2009 memorandum and opinion, has established by clear and convincing evidence that he was involved in defrauding and falsely billing Medicare and Medicaid, despite the fact that he was convicted only of conspiracy. Given that Medicare and Medicaid are health insurance programs administered by the federal and/or state governments, clearly respondent was engaged in insurance fraud.
 

 Supreme Court Rule XIX, Appendix E, sets forth guidelines depicting conduct that might warrant permanent disbarment. Respondent’s conduct falls squarely within Guideline 6, which indicates that permanent disbarment may be warranted for instances of “[insurance fraud, including but not limited to staged accidents or widespread runner-based solicitation.” Case law also establishes that Medicare/Medicaid fraud amounts to insurance fraud, for which permanent disbarment is warranted. For example, in
 
 In re: Sheffield,
 
 07-0288 (La.6/15/07), 958 So.2d 661, we stated that “submission of fraudulent Medicaid claims is clearly encompassed by Guideline 6, which pertains to insurance
 
 *842
 
 fraud.” Furthermore, in
 
 In re: Bates,
 
 09-2780 (La.1/29/10), 26 So.3d 746, we accepted a petition for consent discipline imposing permanent disbarment upon an attorney |i,who was convicted of two counts of health care fraud and two counts of paying illegal remuneration to Medicare beneficiaries.
 

 Under these circumstances, we will adopt the board’s recommendation and permanently disbar respondent. We will also order respondent to make restitution in accordance with his criminal sentence.
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Mazen Younes Abdallah, Louisiana Bar Roll number 29059, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that respondent make restitution in accordance with his criminal sentence. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 *
 

 Chief Justice Kimball not participating in the opinion.
 

 [1]
 

 .Ambulance services are paid for by Medicare and Medicaid only when the patient's condition contraindicates use of other transportation, as when, for example, the patient is confined to bed and must be moved by stretcher only. If the patient can sit, stand, or walk, Medicare and Medicaid will not pay for the trip by ambulance. In Americare's case, many of the patients were ambulatory at the time of transport, but Medicare and Medicaid were billed as if they were not. In some claims, according to the indictment, Ameri-care falsely alleged that the patient was found unconscious, in shock, and bleeding. The indictment also alleged that some patients rode to and from dialysis in personal cars, driven by Americare personnel, but Medicare and Medicaid were billed as if the trip were an ambulance transport.
 

 [2]
 

 . The federal government seized $44,200.72 from respondent’s bank account and applied the funds as a credit towards the restitution amount.
 

 [3]
 

 . Pursuant to Supreme Court Rule XIX, § 19(E), respondent was allowed to present “evidence only of mitigating circumstances
 
 *839
 
 not inconsistent with the essential elements of the crime for which he ... was convicted as determined by the statute defining the crime.”
 

 [4]
 

 . Three attorneys submitted character letters on respondent's behalf.
 

 [5]
 

 . Respondent solicited ineligible patients for Americare's services both before and after purchasing the company.