964 So.2d 293 (2007)
In re Glenda Ann SPEARS.
No. 2007-B-0499.
Supreme Court of Louisiana.
August 31, 2007.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Glenda Ann Spears, an attorney licensed to practice law in Louisiana but currently on interim suspension pursuant to our order in In re: Spears, 04-2373 (La.9/29/04), 883 So.2d 438.

UNDERLYING FACTS
On September 22, 2004, respondent pleaded guilty in the United States District Court for the Eastern District of Louisiana to one felony count of computer fraud, a violation of 18 U.S.C. § 1030(a)(4),[1] and one felony count of conspiracy to commit computer fraud, a violation of 18 U.S.C. § 371. According to the factual basis for respondent's guilty plea, in April 2004, the Chief Judge of the Orleans Parish Criminal District Court reported to the FBI that a person who was on drug probation was complaining that his probation officer, Angela Kirkland, was pressuring him to pay $500 in order to be released from probation and aftercare. The probationer subsequently agreed to cooperate with law enforcement and to record his conversations with Ms. Kirkland. On April 26, 2004, the probationer met Ms. Kirkland, and in a recorded conversation, she accepted $360, a portion of the requested $500 payment. During the conversation, Ms. Kirkland told the probationer that as a result of the payment he would be released from drug court probation and aftercare. Shortly thereafter, Ms. Kirkland recommended to the sentencing judge that the defendant be released from probation and aftercare, and he was released.
Special Agents of the FBI and officers assigned to the Corruption Task Force of the New Orleans Police Department (NOPD) then began interviewing other persons who had been released from probation. *294 This investigation revealed that respondent, who was then employed by the Orleans Indigent Defender Program (OIDP) had received a $500 payment from a probationer on November 15, 2003. Respondent split this fee with Ms. Kirkland, who in turn recommended to the court that the probationer be released from probation.[2] The judge accepted this recommendation, and the probationer was released from probation.
On July 12, 2004, the FBI and the NOPD approached Ms. Kirkland, who admitted that she had engaged in criminal activity. She also implicated respondent in the scheme, which had been ongoing for nearly a year. With Ms. Kirkland's cooperation, agents subsequently taped three of her telephone calls with respondent. In these calls, Ms. Kirkland told respondent that she had several other probationers who wanted to be released from probation and aftercare. Respondent said that the fee, which she would subsequently collect and split with Ms. Kirkland, would be $2,500 per probationer.
As a result of these calls between respondent and Ms. Kirkland, on July 16, 2004, an undercover law enforcement agent posing as a probationer met with respondent and paid her $2,500.[3] During the meeting, which was audio and video recorded and under the surveillance of FBI agents and NOPD officers, respondent accepted the $2,500 payment and agreed that the probationer would be released from probation because she was working with Ms. Kirkland. Respondent then arranged a meeting with Ms. Kirkland and split half of the $2,500 she had received from the undercover agent. The money respondent turned over to Ms. Kirkland was recovered by the FBI and was the exact money that had been given to the undercover agent.
On July 21, 2004, as a result of additional consensual phone calls made to respondent by Ms. Kirkland, respondent met with another undercover agent posing as a probationer. This meeting was also audio and video recorded and under surveillance, and respondent again asked for and received $2,500 from the agent. After the payment was made, respondent met with Ms. Kirkland under the overpass at Poydras and North Broad Streets and paid her $1,250. That money was recovered by the FBI and respondent was immediately arrested.
Following respondent's guilty plea to the conspiracy and computer fraud charges,[4] she was sentenced on December 14, 2004 to three years of probation. Respondent was placed on home detention for a period of six months, and required to wear an electronic monitoring device. She was also fined $10,000, payable in equal monthly installments of $250 beginning on February 1, 2005, and was ordered to perform 200 hours of community service after completing the period of home detention.

DISCIPLINARY PROCEEDINGS
In March 2005, the ODC filed one count of formal charges against respondent, alleging that her conduct constituted a violation of Rules 8.4(b) (commission of a criminal *295 act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct. Respondent answered the formal charges and admitted her conviction, but she denied that her conduct violated the Rules of Professional Conduct. Respondent requested that a hearing be convened and that she be disciplined "not exceeding the term imposed by the United States District Court."

Hearing Committee Report
This matter proceeded to a formal hearing in August 2005. Considering the evidence and testimony presented at the hearing, the hearing committee found that respondent pleaded guilty to the criminal charges against her, namely conspiracy to commit computer fraud and knowingly and intentionally and with intent to defraud, accessing and causing access to a protected computer by exceeding authorized access and obtaining something of value. The committee further found that the facts of respondent's case do not exactly match the elements of the crimes charged, but that it was in her best interest to accept the plea that was offered. Based on these factual findings, the committee determined that respondent violated Rules 8.4(b), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
The committee found that respondent intentionally violated duties owed to the public and as a professional, and that her conduct resulted in substantial injury to the legal profession. The baseline sanction for respondent's misconduct is disbarment.
In mitigation, the committee recognized the following factors: absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, inexperience in the practice of law (admitted 1998), good character and reputation, imposition of other penalties or sanctions, and remorse. The committee also noted that respondent "is a single parent raising a young child." In aggravation, the committee found that respondent's conduct evidenced a dishonest or selfish motive, in that she stood to gain monetarily from her misconduct. The committee also observed that respondent "worked in the court system and her actions had a direct affect upon the public's confidence in the Orleans Parish Criminal Judicial Court system."
In light of the mitigating factors present, the committee determined that it is appropriate to deviate downward from the baseline sanction of disbarment. Accordingly, the committee recommended that respondent be suspended from the practice of law for 24 months, retroactive to the date of her interim suspension.
The ODC filed an objection to the leniency of the sanction recommended by the hearing committee.

Disciplinary Board Recommendation
The disciplinary board found that respondent admitted the facts giving rise to the felony conviction which is the basis for the formal charge. In entering a guilty plea to the felony charges, respondent agreed that had the matter gone to trial the facts would have been proven beyond a reasonable doubt. This standard exceeds the clear and convincing standard set forth in Supreme Court Rule XIX.
The board determined that respondent violated the Rules of Professional Conduct as charged by engaging in a conspiracy to commit computer fraud and computer fraud by soliciting funds from clients to falsely obtain their release from *296 probation. Respondent pleaded guilty to two felony counts, which implicates Rule 8.4(b). Respondent's conduct of soliciting money from clients to split with her co-conspirator, Angela Kirkland, for her cooperation to alter computerized docket records and make false recommendations to the court for release of clients from probation involves fraud and deceit, in violation of Rule 8.4(c). Finally, respondent's conspiratorial actions of promoting false representations to the court regarding clients on probation is conduct prejudicial to the administration of justice, in violation of Rule 8.4(d).
Respondent intentionally violated duties owed to the public and to the legal system. In the factual basis which respondent agreed with and signed, she and Ms. Kirkland had been engaged for one year in a scheme to elicit money from clients, alter the computer records, and aver in court that the clients should be released from probation. The public's confidence in the justice system and the legal system is surely shaken when an officer of the court purposely conspires to obtain money from clients and works to put forth false allegations to the court.[5] The harm, while perhaps intangible, is irrevocable. The baseline sanction for respondent's misconduct is disbarment.
In mitigation, the board recognized the following factors: absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, imposition of other penalties or sanctions, and remorse. The board found the following aggravating factors are applicable: dishonest or selfish motive, multiple offenses, and substantial experience in the practice of law. The board noted that respondent was not inexperienced in the practice of law at the time of her misconduct, which began approximately five years after her admission, but more importantly, "one does not need to be a lawyer to know that accepting money to have records changed and to make false statements to a court is deceitful and dishonest."
Turning to the issue of an appropriate sanction for respondent's misconduct, the board reviewed the prior jurisprudence of this court in cases in which the respondent attorney was convicted of a serious crime. The board noted that such cases have generally resulted in disbarment or permanent disbarment. Considering that in this case the aggravating factors outweigh the mitigating factors, and that respondent abused the trust of her position as an officer of the court, the board found that permanent disbarment is appropriate.
Based on this reasoning, the board recommended respondent be permanently disbarred. The board also recommended that respondent be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection in this court to the disciplinary board's recommendation.

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent's crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); In re: Boudreau, 02-0007 (La.4/12/02), 815 So.2d 76; Louisiana State Bar Ass'n v. Wilkinson, 562 So.2d 902 (La.1990).
*297 In the instant case, respondent stands convicted of computer fraud and conspiracy to commit computer fraud. These crimes are felonies under federal law and clearly warrant serious discipline. Therefore, the only remaining issue is the appropriate sanction for respondent's misconduct. The resolution of that issue depends upon the seriousness of the offense, the circumstances of the offense, and the extent of the aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Perez, 550 So.2d 188 (La.1989).
Respondent does not dispute that the applicable baseline sanction for her misconduct is disbarment under both the ABA's Standards for Imposing Lawyer Sanctions and the prior jurisprudence. Nevertheless, respondent argues that the mitigating factors present justify a substantial downward deviation from disbarment to a three-year suspension. We recognize that several mitigating factors are supported by the record, including the absence of prior disciplinary offenses, respondent's cooperation with the ODC, and the imposition of other penalties or sanctions in the criminal case. Nevertheless, considering the nature of the conduct forming the basis for the criminal charges, these mitigating factors do not justify the imposition of any sanction less than disbarment.
In contrast to respondent's argument that a substantial downward deviation from the baseline is warranted in this case, the ODC contends that respondent's conduct is so egregious that permanent disbarment should be imposed. The disciplinary board agreed, finding that Guideline 2 of the permanent disbarment guidelines (intentional corruption of the judicial process, including but not limited to bribery, perjury, and subornation of perjury) is applicable.
For approximately one year, respondent was involved with Angela Kirkland, a probation officer in Orleans Parish Criminal District Drug Court, in a bribery scheme in which participants in the drug court probation program were offered a release from their probation obligations in exchange for cash. To carry out this scheme, respondent and Ms. Kirkland recommended that judges release certain probationers who had paid them off, and they caused false information to be entered into the court's computer system. We cannot and will not condone conduct by an attorney that is so plainly calculated to frustrate the administration of justice.
Based on this reasoning, we will accept the disciplinary board's recommendation and permanently disbar respondent.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Glenda Ann Spears, Louisiana Bar Roll number 25508, be stricken from the roll of attorneys and that her license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
CALOGERO, C.J., would simply disbar the respondent.
JOHNSON, J., would disbar, but not permanently.
NOTES
[1] 18 U.S.C. § 1030, entitled "Fraud and related activity in connection with computers," provides in pertinent part as follows:

(a) Whoever
* * *
(4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, . . .
shall be punished as provided in subsection (c) of this section.
[2] Respondent's actions constituted computer fraud because she affected the Orleans Parish Criminal District Court Docket Master Computer, where all entries involving a defendant's case are maintained. This computer is a protected computer under federal law, as it is used by city officials in New Orleans and the information in the computer is used by persons in other states, thereby affecting interstate commerce.
[3] The meeting was held across the street from the courthouse on Tulane and Broad.
[4] Ms. Kirkland pleaded guilty to conspiracy arising out of her role in the scheme.
[5] The board noted that respondent's scheme was widely known in the local community through newspaper reports.