| .ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Michael H. O’Keefe, Jr., an attorney licensed to practice law in Louisiana but currently on interim suspension based upon his conviction of a serious crime. In re: O’Keefe, 09-1059 (La.5/27/09), 9 So.3d 846.
UNDERLYING FACTS
In 2007, respondent was indicted by a federal grand jury in the Eastern District of Louisiana on charges of conspiracy to *1241 defraud the United States, conspiracy to commit money laundering, and engaging in monetary transactions in property derived from unlawful activity. The indictment alleged that respondent participated in a “house flipping” scam which involved fraudulent applications for federally insured mortgage financing through the U.S. Department of Housing and Urban Development (HUD). On April 20, 2009, the original indictment was dismissed and respondent pled guilty to a one-count superseding bill of information for making false statements in a transaction with HUD, a violation of 18 U.S.C. § 1010.[1] He was sentenced to Lserve eighteen months in federal prison and was ordered to pay $686,565.55 in restitution, representing the amount of HUD’s financial loss.[2]
According to the factual basis for the guilty plea, Citywide Mortgage, Inc. (“Citywide”) was the center of a HUD “house flipping” scam from 2001 to 2008. Respondent was the president and owner of Citywide, which provided conventional mortgage loans as well as federally insured mortgage financing (“HUD loans”) for low-income home buyers who could not afford the standard 10-20 percent down payment ordinarily required by lending institutions for conventional mortgages. Under the HUD loan program, HUD insures 97% of the loan and is responsible for paying the outstanding loan amount to the financial institution holding the mortgage if the mortgagor defaults on the loan. This guarantee makes these loans very marketable on the secondary mortgage market because there is no risk to the mortgage holder. Citywide became a direct endorsement lender for HUD, and as such, could approve loans for low-income buyers and submit them directly to the Federal Housing Administration for HUD mortgage insurance. HUD loans were approximately 65% of Citywide’s business.
|sTo accomplish the “house flipping” scam, a corrupt real estate investor would first purchase a blighted property for a nominal amount. The investor then arranged for a “straw buyer” to purchase the property.[3] The straw buyer was instructed to complete a fraudulent HUD loan application with Citywide, and in turn, Citywide “qualified” the straw buyer for a HUD-insured loan by submitting false information about the applicant’s taxes, credit, and employment, as well as an appraisal that inflated the true value of the property being purchased. No independent verification was undertaken by HUD *1242 of this information because Citywide had been entrusted with the fiduciary duty of being a direct endorsement lender.
After the loan was approved, the corrupt real estate investor resold (or “flipped”) the property to the straw buyer at an inflated price based on the fraudulent appraisal. By using a HUD-qualified straw buyer, the investor was able to complete the illusion of a legitimate real estate transaction and then profit from the sale of the overvalued property to someone who never intended to move into the property and was unable to meet his financial obligations as a homeowner. After a period of non-payment by the straw buyer, the loan would go into default, foreclosure would begin, and HUD would assume the loss and the responsibility to pay off the mortgage.
DISCIPLINARY PROCEEDINGS
In 2009, the ODC filed one count of formal charges against respondent, alleging that his conduct as set forth above violated Rules 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) |4(engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct. Respondent filed an answer generally admitting the factual allegations of the formal charges, but denying Citywide was the “center” of the “house flipping” scheme. Respondent also admitted that he violated the ethical rules as charged, for which an “appropriate sanction” should be imposed.
This matter then proceeded to a formal hearing. The ODC introduced evidence of respondent’s conviction and offered the testimony of Aimee Peralta, an employee of the HUD Office of the Inspector General and the lead agent responsible for investigating HUD’s case against respondent.
Respondent was incarcerated on the date of the hearing and thus did not attend. His counsel provided a letter to the hearing committee in lieu of his testimony.

Hearing Committee Report

The hearing committee found that based upon the record and the testimony of Ms. Peralta, which it deemed credible, respondent was involved in and punished for criminal activities which constitute a serious crime under Supreme Court Rule XIX, § 19. Turning to a discussion of the appropriate sanction for respondent’s conviction,[4] the committee determined the applicable baseline sanction is disbarment. In aggravation, the committee recognized the following factors: a dishonest or selfish motive and substantial experience in the practice of law (admitted 1983).[5] In | ^mitigation, the committee observed that respondent has no prior disciplinary record and has suffered the imposition of other penalties or sanctions.
Based upon these findings, and considering “this is a clear cut case of fraud,” the *1243 committee recommended respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee’s report and recommendation.

Disciplinary Board Recommendation

The disciplinary board found the hearing committee’s factual findings are not manifestly erroneous and adopted same. The board also made its own findings of fact. Based on these findings, the board determined respondent violated the Rules of Professional Conduct as charged in the formal charges.
The board found respondent intentionally violated duties owed to the public, resulting in actual financial harm to HUD. The baseline sanction for respondent’s misconduct is disbarment.
In mitigation, the board found the following factors: absence of a prior disciplinary record, cooperative attitude toward the disciplinary proceedings, and imposition of other penalties or sanctions. As aggravating factors, the board found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and substantial experience in the practice of law.
Considering respondent’s misconduct in light of the permanent disbarment guidelines and the prior jurisprudence of this court, the board recommended respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
| ^DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent’s crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); In re: Boudreau, 02-0007 (La.4/12/02), 815 So.2d 76; Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990). The discipline to be imposed in a given case depends upon the seriousness of the offense, the circumstances of the offense, and the extent of the aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Perez, 550 So.2d 188 (La.1989).
Here, respondent stands convicted of making a materially false statement to HUD for the purpose of obtaining mortgage insurance. This crime is a felony under federal law and clearly warrants serious discipline. Indeed, respondent concedes that disbarment is a proper sanction for his conduct. However, in their respective reports, the hearing committee and the disciplinary board have concluded that respondent’s offenses are so egregious that he should be permanently prohibited from applying for readmission to the bar.
We agree. In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might warrant permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of conduct which might be considered worthy of permanent disbarment. For purposes of the instant case, Guideline 6 is relevant. That guideline provides:
17GUIDELINE 6. Insurance fraud, including but not limited to staged accidents or widespread runner-based solicitation.
Respondent maintains this guideline does not apply to him because the crime of which he was convicted does not involve fraud. However, as explained *1244 above, the guidelines are illustrative in nature and do not constitute an exclusive list of conduct for which an attorney may be permanently disbarred. Moreover, in assessing discipline in the case of an attorney who has been convicted of a crime, we have often looked beyond the title of the offense to the facts of the conviction to determine the appropriate sanction. For example, in In re: Kirchberg, 03-0957 (La.9/26/03), 856 So.2d 1162, the lawyer was convicted of mail fraud arising out of a runner-based solicitation scheme. He admitted he paid runners to solicit personal injury clients for his law practice and received illegal payments from medical providers in exchange for referring his clients to the providers for medical treatment. Concluding that the lawyer’s conduct was “precisely the type of reprehensible conduct” addressed by Guideline 6, we imposed permanent disbarment.
Similarly, the underlying facts of respondent’s conviction demonstrate that his conduct represents a very serious ethical breach. Respondent defrauded the federal government into guaranteeing hundreds of thousands of dollars in mortgage loans to unqualified “straw buyers.” He accomplished this by submitting fraudulent loan applications and bogus appraisals that inflated the true value of the property being purchased. After the HUD-backed loans were sold on the secondary mortgage market, the straw buyers defaulted, leaving HUD responsible. As in Kirchberg, this reprehensible conduct is clearly covered by Guideline 6.
Accordingly, we will accept the disciplinary board’s recommendation and impose permanent disbarment.
1 ¡¿DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Michael H. O’Keefe, Jr., Louisiana Bar Roll number 2029, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Chief Justice Kimball not participating in the opinion.

.18 U.S.C. § 1010 provides:
Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Department of Housing and Urban Development for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Department, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such Department, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined under this title or imprisoned not more than two years, or both.

. Respondent had already paid $200,000 of the restitution amount as of the date of his sentencing.

. The straw buyers were usually family members of the corrupt real estate investor, the working poor, or destitute or drug addicted persons. They never took possession of the property they had allegedly purchased and were paid between $500 and $2,000 for their role in the transaction.

. The committee indicated that “this matter proceeded on a deemed admitted basis,” which is in error as respondent did file an answer to the formal charges. However, the committee then noted that its report was limited to a discussion of the appropriate sanction for respondent’s misconduct, which is a correct statement given the criminal conviction at issue. See In re: King, 09-1560 (La. 1/8/10), 33 So.3d 873 (in a lawyer disciplinary proceeding based upon a criminal conviction, “the sole issue to be determined is whether the crime warrants discipline, and if so, the extent thereof”).

. The committee also noted the "complicated and complex nature of the offenses” committed by respondent. While true, this is not a recognized aggravating factor under the ABA’s Standards for Imposing Lawyer Sanctions.