ATTORNEY DISCIPLINARY PROCEEDING
PER CURIAM *
| iThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, James D. Mecca, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
In late 2013, the St. Tammany Parish Sheriffs Office obtained information that respondent was receiving drugs for payment of his legal services. Specifically, a cooperating individual (Cl) contacted the Narcotics Division of the Sheriffs Office on December 12, 2013 to advise that she had come into contact with respondent while attending court earlier that morning, and that respondent had offered his legal services in exchange for marijuana. The Cl reported that she had "used respondent in the past for legal counsel, and had paid him with marijuana on three separate occasions over a. period of one. year or more. On the most recent occasion, respondent approached the Cl and said he had heard the Cl may need some help again. The Cl then asked respondent how much his services would cost, or would it be the “same old, same old.” Respondent replied, “same old, same |?old,” meaning, that he would accept marijuana for his legal services in place of currency.
Narcotics officers then arranged for the Cl to speak with respondent by telephone concerning the details of the transaction. During a.recorded conversation about respondent’s fee, the Cl advised respondent that he had “a crap load of smoke if you want some of that” (meaning marijuana). Respondent asked how.much “stuff’ the Cl had, and the Cl responded, “A whole backpack full.” Respondent replied, “Oh, *828 my God,” and readily agreed to “collect payments from both accounts,” meaning that he would accept the marijuana to offset the total attorney’s fees owed by Cl.
Narcotics officers then set up a controlled “exchange” which occurred on December 20, 2013 in the parking lot of a retail store in Covington. The marijuana provided to the Cl by law enforcement was approximately one-half pound in weight and had an approximate street value of $2,500.[1] After departing the area with the marijuana as well as marked cash provided to the Cl by law enforcement, respondent was stopped for a traffic violation and arrested. He was booked with possession with intent to distribute marijuana and failure to stop at a stop sign.
Respondent’s arrest and the law enforcement investigation were reported by the New Orleans media on January 14, 2014. The following day, respondent, through counsel, self-reported his arrest to the ODC as well as his intent to cooperate with the Judges and Lawyers Assistance Program (“JLAP”). Respondent was subsequently admitted to the Palmetto Addiction Recovery Center in Rayville, Louisiana. Following an evaluation, respondent was diagnosed with alcohol and cannabis dependence and unresolved grief and depression stemming |sfrom the death of his father in 2011. Respondent then entered a ninety-day inpatient treatment program at Palmetto and successfully completed the program in April 2014. On May 2, 2014, respondent executed a five-year recovery agreement with JLAP. He has been fully compliant with the requirements of the agreement since it was executed.
On August 8, 2014, a bill of information was filed charging respondent with possession of marijuana (first offense), a misdemeanor. On the same day, respondent pleaded guilty to the charge and was sentenced to serve six months in the parish jail, suspended, and placed on probation for one year under the supervision of JLAP. He was also required to pay a $200 fine and court costs.
DISCIPLINARY PROCEEDINGS
In January 2015, the ODC filed one count of formal charges against respondent, alleging that his conduct as set forth above constituted a violation of Rule 8.4(b) of the Rules of Professional Conduct. Respondent answered the formal charges and admitted his criminal conviction. He also requested a hearing in mitigation, which was conducted by the hearing committee in July 2015.

Hearing Committee Report

After considering the evidence and testimony presented at the hearing, the hearing committee made the following factual findings: Respondent practices primarily in the area of criminal defense in St. Tammany and Washington Parishes. Prior to becoming an attorney in 2002, he was employed in law enforcement. He was arrested in St. Tammany Parish on December 20, 2013 as the result of a “sting” operation conducted by the St. Tammany Parish Sheriffs Office (“STSO”). A Cl posed as a potential criminal client who needed legal representation for her son. The Cl informed the STSO that she had “paid” respondent for representation |4with marijuana in previous representations, which respondent admitted. Respondent told the Cl at that time that if future legal services were required they could work out the “same old same old,” meaning payment of *829 marijuana in lieu of or in addition to money-
On December 16-17, 2013, the Cl placed several phone calls to respondent requesting legal representation of her son. The parties discussed the matter and respondent proposed the sum of $2,500 to handle the case. The Cl subsequently informed respondent that she had a “crap load of smoke” and a “backpack full of marijuana.” Respondent then mentioned the sum of $700 and that he would get back in touch with the CL
On December 20, 2013, the parties made arrangements to meet in the parking lot of a store in Covington. They met in a vehicle and discussed a cash payment for legal services while the police conducted surveillance. The Cl asked respondent if he would take $400 instead of $700 and respondent agreed, then stated he would accept $300. Respondent then asked about the “other thing. [Tjhat’s what-I am most concerned about,” according to the police report. The Cl gave respondent a backpack, which he examined and took with him. He got into his car and left. Shortly thereafter, he was pulled over by law enforcement in front of his law office and arrested by STSO deputies for possession with intent to distribute.
Respondent’s testimony was largely identical to that of the STSO deputy and the police report insofar as what led up to the arrest. He testified that he did indeed make arrangements with the Cl to barter his legal services for marijuana and cash. However, he disputed that he ever planned to distribute the marijuana and stated that it was all for his own personal use. The committee found this portion of respondent’s testimony to be credible and evidently the District Attorney’s Office Rfelt the same way, as the criminal charge of distribution was reduced to simple possession.
Respondent went on to testify that although he was extremely remorseful for the arrest and .the embarrassment it caused his family and the legal profession, it was the best thing that could have happened to him. He testified that following .the death of his father in 2011, he began to spiral downward and isolated himself from his family. He testified that he had no positive ways to cope with his grief as he had few friends and no close family. He testified that the stresses of his legal practice began to wear on him emotionally and to cope he began to escape through excessive consumption of alcohol and marijuana in the evenings. He testified that drinking and use of marijuana compromised his ability to exercise prudent judgment which culminated in the decision to trade legal services for an illegal drug and ultimately to his arrest. He also testified that the arrest forced him to confront his addictions and get sober, which has subsequently led to him becoming a better son, brother, lawyer, and friend.
The committee found respondent’s testimony to be “extremely credible,” and believed that he expressed genuine remorse for his arrest and was forthright in owning up to his problems and the bad decisions he made. However, the committee was troubled that respondent, a member of the bar, had committed a criminal offense, not to mention that the offense had involved bartering legal services for illegal drugs.
Respondent testified that after his arrest, he immediately sought help for his substance dependence issues. He reached out to a fellow lawyer who is active in AA and to Buddy Stockwell, the Executive Director of- JLAP. Respondent was advised to obtain an evaluation at Palmetto. The report of the evaluation, dated January 20, 2014, recommended that respondent sign a minimum five-year contract with JLAP," complete long-term treatment *830 and outpatient treatment for |fiunresolved grief and depression. Testimony revealed that respondent was in inpatient treatment for ninety days at Palmetto. On May 2, 2014, he executed a recovery agreement with JLAP in which he agreed to be monitored for five years. Requirements include drug screens, three . AA meetings per week, and monthly sobriety reports provided to a JLAP monitor.
Mr. Stockwell testified that since his discharge from Palmetto, respondent has been fully compliant with his JLAP contract and has been faithful in following all of its requirements. Mr. Stockwell testified that he is confident that respondent will continue to adhere to his JLAP contract based on what he has observed thus far. Respondent testified, at times emotionally, that he is committed to maintaining 100% sobriety and that he hit rock bottom when he was arrested. He further offered that he is committed to helping others, both criminal clients and legal professionals, if they struggle with addiction. Once again, the committee noted that it was impressed with respondent’s testimony that he. is committed to his treatment plan -and that he plans to use his unfortunate experience to help others in battling the disease of addiction.
Judges Scott Gardner and Raymond Childress of the 22nd JDC both testified on respondent’s behalf that he has been attentive to his clients, shown excellent skills in his representation, and been respectful to the court and opposing counsel since he has been discharged. Respondent offered further testimony from family members, therapists, and medical professionals treating him and all testimony was unanimous concerning the positive effect that rehabilitation has had on his personal relationships and coping skills with the inherent stress in the legal profession. By all accounts, respondent has worked hard to get .past the dependence issues and has been an active participant in recovery.
There was no testimony offered or evidence submitted that respondent neglected matters connected - to client representations either before or after his |7arrest. Respondent admitted to an arrest for DWI when he was a police officer in the 1980’s, but there was nothing in the record to evidence misconduct as an attorney prior to the arrest in 2013.
Respondent stipulated that his conduct amounts to a violation of Rule 8.4(b) of the Rules of Professional Conduct. Accordingly, the committee found the sole issue before it is a determination of the appropriate sanction for respondent’s conduct. Considering the prior case law involving attorney misconduct through the use of illegal drugs, as well as respondent’s acknowledgment, remorse,' and excellent compliance thus far, the committee recommended that respondent be suspended from the practice of law for one year and one day, fully deferred, provided that he remains compliant with the terms and conditions of his May 2, 2014 JLAP contract.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee’s factual findings do not appear to be manifestly erroneous and are supported by the record. Based on these findings, the board determined respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The board then determined that respondent knowingly and intentionally violated duties owed to the public and the profession. He engaged in criminal conduct, which is a violation of his duty to the public. His misconduct and the press it *831 received cast the profession in a negative light. Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the applicable baseline sanction is suspension.
IsThe board recognized the following aggravating factors: substantial experience in the practice of law (admitted 2002) and illegal conduct. The board found the following mitigating factors apply: absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, imposition of other penalties or sanctions, remorse, and chemical dependency,
Considering these factors, the board recommended that respondent be suspended from, the practice of law for two years, fully deferred, conditioned upon a period of probation to run concurrently with the remainder of respondent’s JLAP recovery agreement, which will end in May 2019.[2] The board further recommended that respondent be assessed with the costs and expenses of this proceeding.
Athough neither respondent nor the ODC filed an objection to the board’s recommendation, on October 7, 2016, we ordered briefing addressing the issue of an appropriate sanction. Both parties filed briefs in response to the court’s order.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. Art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent’s crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); In re: Boudreau, 02-0007 (La. 4/12/02), 815 So.2d 76; Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La. 1990), The discipline to be. imposed in a given ease depends upon the sseriousness of the offense, the circumstances of the offense, and the extent of the aggravating and mitigating circumstances. Louisiana State Bar Ass’n. v. Perez, 550 So.2d 188 (La. 1989).
Here, respondent stands convicted of accepting marijuana in exchange for his legal services, resulting in his arrest on charges of possession with intent: to distribute marijuana and his conviction of possession of marijuana. In connection with his criminal conviction, respondent has acknowledged that he violated the Rules of Professional Conduct as alleged.
Respondent knowingly and intentionally violated duties owed to the public and the legal profession. His criminal conduct resulted in harm to the legal profession and potential harm to his clients and the public. The applicable baseline sanction is suspension. The record supports the aggravating and mitigating factors found by the disciplinary board.
We find the appropriate sanction for respondent’s criminal conduct is a one-year suspension from the practice of law. Considering that respondent bartered his legal services for illegal drugs, directly implicating the practice of law and causing harm to the legal profession, we will not defer any portion of the suspension. Accordingly, we reject the board’s recommended discipline and will suspend respondent from the practice of law for one year.
*832 DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the briefs filed by the parties, it is ordered that James D. Mecca, Louisiana Bar Roll number 28148, be and he hereby is suspended from the practice of law for one year. All costs and expenses in the matter are assessed against respondent in accordance with Supreme | inCourt Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Knoll, J., retired, participated in this decision which was submitted prior to her retirement.

. The marijuana had been placed in a backpack, which also contained a scale and a marijuana grinder. Respondent removed the scale from the backpack and left it in the Cl’s vehicle, apparently not wanting anything suggesting an intent to distribute the marijuana. However, respondent did not remove the grinder from the backpack.

. The board noted that in the past, the court has ordered lawyers to execute new JLAP agreements upon imposition of a sanction and/or probation; however, in this case, Mr. Stockwell testified that renewal of respondent's JLAP agreement for an additional five-year term would be unnecessary.